15981

CAULK v. CAULK
(48 S. E. (2d) 600)

*Messrs. George W. Freeman, Jr.,* of Bennettsville, and *Samuel Want,* of Darlington ,for Appellant,

*Messrs. Tison & Miller,* of Bennettsville, for Respondent. August 9, 1947.

OXNER, J.: The appellant (plaintiff below) and the respondent (defendant below) are husband and wife. At an auction sale held in September, 1939, appellant purchased for $310.00 a tract of land containing 7.13 acres situate about four miles from Bennettsville, South Carolina, and at his request the property was conveyed to his wife. Thereafter appellant erected certain buildings hereinafter referred to on the property. Claiming that title was placed in the name of his wife under a verbal agreement that upon his request she would at any time convey the property to him and that she had declined to do so, this action was commenced on September 1, 1945, for the purpose of obtaining a decree for specific performance of the alleged agreement. Respondent denied making any such agreement, claimed that she owned the property together with all improvements thereon, alleged that appellant had unlawfully moved a two-room house from the property, and asked that appellant be required to account for the value of the building removed and to pay a reasonable sum for his use and occupancy of the premises.

The case was heard by the Resident Judge of the Fourth Circuit. The testimony was taken before him on August

26 and September 14, 1946, and a decree filed on January 15, 1947. The Court held (1) that there was no agreement by respondent to convey the property to appellant, (2) that appellant voluntarily made the improvements thereon with full knowledge that the title was in the name of his wife, (3) that the buildings on the property and fixtures attached thereto belonged to respondent, (4) that appellant was liable for the value of the house which he removed from the premises and for the reasonable value of the use of the premises, and (5) that respondent was entitled to immediate possession. The complaint was dismissed and respondent was awarded judgment against appellant for $5,203.28 which the Court found was proper compensation for the value of the building removed and for the use and occupancy of the premises. This appeal followed.

Appellant and respondent were married on January 30, 1928. They have two children, a daughter 17 years of age, now married, and a boy 14 years old. They lived together until April 25, 1943, when they separated. Respondent claims that appellant deserted her at this time. The children now reside with respondent. For a number of years appellant has operated a liquor store in the town of Bennettsville. Appellant says that on account of the unsatisfactory income from the operation of the liquor store, he decided in 1939 to also operate a grocery store and filling station and purchase the 7.13 acres in controversy with the view of conducting such business at that location. One-third of the purchase price was paid in cash and a purchase money mortgage given for the balance which appellant subsequently paid. The filling station and grocery store were erected on the premises and a mortgage given to the builder for the cost of the construction. Appellant operated the filling station and grocery store for a period of six or eight months when he decided to convert the place into a restaurant or tavern. He commenced operation of this business during the early part of 1940. The equipment for the tavern was purchased largely on credit. For awhile the tavern was operated at a loss. In

1941 the Government established an aviation training school in this area and a number of soldiers were stationed around Bennettsville. Business in general then began to prosper. There was then a considerable increase in the income from both the tavern and the liquor store. From time to time expensive equipment was installed in the tavern so that it is now elaborately furnished with all modern fixtures, including mirrors around the dining room, large electric refrigerators and complete kitchen equipment. Appellant has since been successful in all lines of his business. He purchased from time to time government bonds aggregating approximately $25,000.00 and at the time of the hearing in the Court below had invested more than $25,000.00 in his various enterprises.

Since the parties separated respondent and the children have lived in the home. There is a mortgage on it and title is in respondent's name. She has no source of income. Appellant testified that after the separation he left instructions with those in charge of the liquor store to permit his wife to draw the necessary money to support herself and the children and that she has received approximately $25.00 per week in addition to which he has paid the light and fuel bills and taxes, furnished his wife with a car and bought some clothing for the children. Respondent testified that for a long period of time she was only given $10.00 or $15.00 per week which was finally raised to $25.00. No action has ever been brought to determine the question of separate maintenance and support.

Appellant testified that at the time he purchased the property in controversy he owed considerable money which he has since paid; that he felt it would be easier to finance the cost of improving the property if title was taken in the name of his wife; that in the conduct of his new business he did not want to be harassed with his old obligations; and that he explained this situation to his wife who agreed to convey the property to him at any time he requested her to do so. Respondent denied that she ever made any such agree-

ment with her husband. She testified that her husband told her he was placing title to the property in her name so that if anything happened to him, she and the children would have a place to live and to earn a livelihood. So far as the record discloses there was at this time no rift in the domestic life of this couple.

It is undisputed that appellant paid the purchase price for the land and the cost of all improvements thereon. He has also paid the taxes and insurance premiums. The tavern was operated by him. His wife worked there occasionally during emergencies and baked practically all the pies that were served. The deed to the property was promptly recorded and has since remained in possession of appellant.

The general rule is that when real estate is conveyed to one person and the consideration paid by another, it is presumed that the party who pays the purchase money intended a benefit to himself, and accordingly a resulting trust is raised in his behalf. *Elrod v. Cochran,* 59 S. C. 467, 38 S. E. 122; *Dumas v. Carroll et al.,* 112 S. C. 284, 99 S. E. 801. The presumption, however, may not be in accord with the truth. It may be rebutted and the actual intention shown by parol evidence. *Larisey v. Larisey,* 93 S. C. 450, 77 S. E. 129. But when the conveyance is taken to a wife or child, or to any other person for whom the purchaser is under legal obligation to provide, no such presumption attaches. On the contrary, the presumption in such case is that the purchase was designated as a gift or advancement to the person to whom the conveyance is made. This presumption, however, is one of fact and not of law and may be rebutted by parol evidence or circumstances showing a contrary intention. *Douglass et al. v. Brice et al.,* 4 Rich. Eq. 322; *Catoe v. Catoe,* 32 S. C. 595, 10 S. E. 1078; 2 Bogert on Trusts and Trustees, § 459, page 1391; 26 Am. Jur., Husband and Wife, Sections 100 and 101. "The fact that the transferee is a wife, child or other natural object of bounty of the payor is more than merely a circumstance tending to rebut the inference of a resulting trust. It is of

itself a circumstance sufficient to raise an inference that a gift was intended, and the burden is upon the payor seeking to enforce a resulting trust to prove that he did not intend to make a gift to the transferee". Restatement of the Law of Trusts, American Law Institute, Section 442, Comment on page 1356.

It is equally well established that where improvements are made by the husband upon property which he knows belongs to his wife, the law presumes a gift to her of all such improvements. *Nelson v. Nelson*, 176 N. C. 191, 96 S. E. 986; *Hoef v. Hoef,* 323 Ill. 170, 153 N. E. 658; *Aycock et al. v. Bottoms et al.,* 201 Ark. 104, 144 S. W. (2d) 43.

If appellant had established the agreement which he claims he had with his wife, this would have rebutted the presumption of a gift. But the Court below found as a fact that there was no such agreement. After carefully reading the testimony we are inclined to agree with this conclusion, but in no event can it be said that such conclusion on the part of the trial Judge, who had the opportunity of seeing the parties and observing their demeanor on the witness stand, is against the weight of the evidence.

Having concluded that there was no agreement on the part of respondent to convey the property, it follows that appellant took title in the name of his wife and with full knowledge of that fact made extensive improvements on the property without any agreement or understanding that he was to retain any beneficial interest. Under these circumstances there is nothing to rebut the presumption of a gift of the land and the improvements. At this time apparently the domestic life of this couple was harmonious and it was reasonable to suppose that appellant would participate in the enjoyment of the use of the property. They have now separated. Respondent claims that appellant deserted her. But regardless of the cause of this separation the absolute gift which appellant made cannot

now on account of events subsequently transpiring be metamorphosed into a trust. "As long ago as *Villers v. Beaumont,* 1 Vern. 100, it was determined, that if one makes a gift of which he afterwards repents, the Court has no right to free him from the fetters with which he has voluntarily bound himself, but he must lie down in his own folly; and the doctrine of that case is law to this day—*Francis' Ex'rs v. Lehre's Ex'rs,* 1 Rich. Eq. 271—and always will be, as long as law is founded upon reason and good sense". *Reilly et al. v. Whipple,* 2 S. C. 277.

The Court below further held "that all fixtures used in connection with the eating place and attached to the building" belonged to respondent and enjoined appellant from moving them off the premises. Appellant says these constitute "trade fixtures" and do not belong to respondent. The basis of this contention is appellant's conclusion that the Court below found that the relation of the parties was that of landlord and tenant. If the parties occupied that relationship, we would be inclined to say that appellant would be entitled to remove much, if not all, of this equipment. But there was no relation of landlord and tenant between appellant and respondent and we do not think the decree appealed from is reasonably susceptible to a construction holding otherwise. It is true that in holding appellant liable for the use of the premises the lower Court refers to this charge as "rent". However, it is obvious from the whole decree that the word "rent" was not used in its strict legal sense where the relation of landlord and tenant existed but was intended and used in the broader colloquial sense of a reasonable charge for the use and occupation of the premises.

The lower Court accepted respondent's explanation of the fact that title was taken in her name, which was that appellant gave the property to her so that it could be used as a source of livelihood if anything happened to him. We have affirmed this factual finding. The value of the premises for this purpose would be materially lessened if the fixtures used in connection with the eating place and attached to the build-

ing were removed. The reasonable inference is that these fixtures were installed as a permanent addition to the property. Like the buildings erected they were intended as a gift.

In *Albert v. Uhrich et al.,* 180 Pa. 283, 36 A. 745, 746, the wife owned some mill property which was operated by her husband in her name. The husband installed at his own expense a boiler and engine. In holding that this machinery became a part of the realty, the Court said: "While the business was being run by him (the husband) for the wife, and in her name, he attached to the freehold certain articles which forthwith became part of the milling plant. If they had been put there by a tenant during his term, a lack of intention to convert into realty would have been presumed in his favor.  *  *  *  Yet no such presumption can properly arise in behalf of a husband who voluntarily places fixtures on his wife's land which he is managing as her agent. In the absence of any evidence to the contrary, we may conclude that he intended to make the articles a permanent improvement to the premises".

It would serve no useful purpose to enter into a general discussion of the confused and confusing subject of "fixtures". An extensive review of the authorities in this State will be found in *Planter's Bank v. Lummus Cotton Gin Co.,* 132 S. C. 16, 128 S. E. 876, 41 A. L. R. 592. We had occasion recently to consider the question in *City of Greenville v. Washington American League Baseball Club et al.,* 205 S. C. 495, 32 S. E. (2d) 777. It is sufficient to say that under our decisions the question of whether an article is to be regarded as a fixture depends largely upon the intention of the parties. All the circumstances must be considered, especially as they throw light upon the intention. The particular case must be considered with reference to the relation of the parties.

For the reasons stated, we think the lower Court correctly held that the land, the buildings erected thereon, and the fixtures used in connection with the eating place and attached to the building belong to respondent.

We next consider the liability of appellant for the use and occupation of the premises. The lower Court found the premises were reasonably worth $100.00 per month and held that appellant should pay this amount from April 25, 1943, the date on which the parties separated, until the premises were vacated. To the date of the decree this amounted to $4,453.28. (Judgment was awarded against appellant for $5,203.28, of which $4,453.28 was for the use of the premises and the balance of $750.00 represented the value of the building removed from the premises. The latter item will be hereinafter discussed.) There is no exception as to the amount fixed by the Court as the reasonable value of the use of the premises. Appellant's position is that he is not liable at all for the occupancy of the premises.

It does not appear from the record that prior to the commencement of this action respondent ever claimed or demanded any compensation from her husband for the use of the premises. A reasonable inference from her silence is that she did not intend to make any charge. *Eaton et al. v. Davis et al.,* 165 Va. 313, 182 S. E. 229. It is true that for a period of approximately two years and four months prior to the commencement of this action the parties were living separate and apart but there still existed the relation of husband and wife. During this time appellant continued to contribute to the support of respondent and respondent continued to acquiesce in his use and management of the property without any suggestion of an intention to claim compensation. We shall not now unscramble the eggs by converting that which was intended as a gift into a charge. The applicable principles are stated in *McLure v. Lancaster,* 24 S. C. 273, 58 Am. Rep. 259, and *Simmons v. Stevens et al.,* 118 S. C. 342, 110 S. E. 798. These decisions, we think, sustain the conclusion that appellant should not be required to pay for the use of these premises prior to the time of the service of respondent's answer when for the first time, so far as the record discloses, appellant was put on notice that his wife

intended to claim compensation for his use of the property. However, it then definitely appeared that respondent intended to make a charge and there was no longer any room for the presumption of a gift. From the time of the service of this answer appellant is liable to respondent at the rate of $100.00 per month for the use of these premises, less a credit for the amount of taxes and insurance premiums paid on this property since this action was commenced.

The record does not disclose the exact time when the two room cabin built on the premises was moved to an adjoining lot acquired by appellant in his own name. It appears that this was done for the purpose of providing space for the construction of the present buildings on the property in question. However, no complaint of this action was made by respondent until the service of her answer. Apparently the building was removed with full knowledge and acquiescence on her part. The principle upon which a charge for the use of the premises was disallowed in part applies with equal force to the charge now made for the value of the building removed. The lower Court erred in holding appellant liable for this item.

Finally, it is contended that the lower Court erred in holding that respondent was entitled to immediate possession of the premises. It is claimed that the lower Court held that the parties occupied the relation of landlord and tenant and it is argued that under this view appellant was entitled to notice to vacate the premises which had not been given. We have already concluded that appellant's counsel have misconstrued the holding of the lower Court in this particular and that appellant was not a tenant. It follows that this exception is without merit. Equity is fully empowered to give full relief. Should appellant fail to vacate the premises, respondent is entitled to an appropriate order from the lower Court dispossessing him and placing her in possession.

That portion of the decree which awards judgment against appellant for $5,203.28 is reversed and the decree appealed

from is in all other respects affirmed. The liability of appellant for the use of the premises will be computed in the manner herein stated and judgment awarded against appellant therefor. The case is remanded to the lower Court for further proceedings in conformity with the views herein expressed.

BAKER, CJ., and FISHBURNE, STUKES and TAYLOR, JJ., concur.