16098

BATES v. BATES *ET AL.*
(48 S. E. (2d) 612)

*Messrs. Williams & Henry* and *W. E. Bowen,* of Greenville, for Appellant,

*Messrs. W. W. Wilkins* and *C. S. Bowen,* of Greenville, . for Respondents,

July 1, 1948.

STUKES, J.: Carl M. Bates and Mrs. Blanche S. Bates were married about twelve years ago. There are no children of that marriage. Both had been previously married, and Bates has several grown children, and Mrs. Bates has a daughter, her, co-defendant in this action, who is about fifteen years old and lived with them. He is a machinist and he and Mrs. Bates were employed during the most of their married life, and one earned about as much as the other and both contributed to the purchase and maintenance of their several homes and to their living expenses. During the recent war they were employed for some years at the Charleston Navy Yard, and at another time, for less than a year, in Birmingham, Alabama, which was Bates' original home and where his father still lives.

For some time prior to the happenings which gave rise to this litigation Bates worked at Ballentine Machine Works near Greenville and Mrs. Bates was employed in a cotton mill and at other places. Years ago they purchased a lot together, taking title as tenants in common, improved it by the contributions of both and sold it, dividing the proceeds approximately equally. Thereafter they bought about sixteen acres of vacant land three miles from the city of Greenville for the sum of $3,500.00, of which Bates paid $500.00 and Mrs. Bates $3,000.00 and title was taken at his direction in her name alone. She bought some of the lumber and other material, he about half, and thus together and contributing their joint labors, aided by her father, they erected a modest three-room home in which they lived. She possessed unusual capacity for manual work. Their relations were not happy and culminated in a serious altercation on February 10, 1947, and in the ensuing physical encounter Mrs. Bates and her daughter, Sara, received minor scratches and bruises, and Bates had a head wound which was inflicted with the back of an ax in the hands of Mrs. Bates, she claimed in defense of herself and daughter. It was necessary

that he go to a hospital for treatment, after which he was dismissed.

He contends that he did not return to his home to stay until delivery of deed to him by Mrs. Bates on·February 24th following, which purported to convey to him about five acres of the land, including the homestead. In contradiction, Mrs. Bates and her daughter and several neighbor-witnesses for them testified that Bates returned to the home on the day after the fight and spent his nights there as usual until· the eve of the commencement of this action. The testimony concerning this fact and others is in violent conflict.

Bates brought this action in equity on June 2, 1947, for the purpose of removing an alleged cloud from his title which consisted of a deed from Mrs. Bates dated May 22, 1947, to her daughter, Sara, which purported to convey the same premises. It was alleged in the complaint that the property had been conveyed to plaintiff in consideration of $10.00, love and affection and other valuable consideration, and that the grantor's second deed, that to her daughter, was void for the reasons that the identical premises had been previously conveyed to plaintiff and that the second deed was without consideration and the grantee had knowledge at the time thereof that the land had already been conveyed to the plaintiff.

Mrs. Bates answered, denying the alleged deed to her husband and alleged that when she bought the property it was in her name despite her husband's demand that it be conveyed jointly to him and her, and that he repeatedly thereafter made demands that she convey a portion of the property to him and that upon her refusal he became hostile, abused and occasionally struck her; that she had the deed of February 24th to him prepared and she executed it and withheld delivery, but about two weeks thereafter he stealthily took it from her purse and refused upon demand to re-deliver it to her; that it is void for lack of considera-

tion and delivery; wherefore, the prayer was for dismissal of the complaint and that the deed be adjudged void and cancelled of record.

The defendant, Sara Salter, through her guardian *ad litem,* answered separately in similar vein and set up the deed of May 22, 1947, by her mother to her; that the deed of her mother to Bates was procured by coercion and executed for the purpose of meeting the emergency of further effort by Bates to compel his wife (her mother) to convey the property to him, and that he found the deed in its hiding place, and thereafter hid it himself until it was recorded on May 29, 1947; that plaintiff's claim constitutes a cloud upon the title of the answering defendant, wherefore she is entitled to have the deed to plaintiff cancelled.

As already indicated, upon general order of reference to the Master he took the voluminous testimony which was presented by plaintiff and defendants at several hearings and he concluded that after the difficulty of February 10, 1947, the plaintiff went and stayed successively at a tourist camp and a hotel; and engaged a room in a private home for the following week, which latter he never occupied because on the day of his intended move he was telephoned at his work by his wife who met him at an appointed place in the city and delivered to him the deed, whereupon they became reconciled and both returned to their home in his automobile; that thereafter, on May 22, 1947, she executed deed to her daughter of the same property, which was without consideration and therefore an attempt to give the property to her daughter who then knew of the execution and delivery of the prior deed to Bates, and Sara was not a subsequent purchaser for value, without notice, and the title having before that been conveyed by Mrs. Bates, she was without power to convey it again and the second deed was void. The Master further found that the deed of February 24th to Bates was free and voluntary and executed without coercion. Recommendation was made accordingly that a

decree should issue declaring that deed valid and the deed to Sara void.

The exceptions to the report of the Master were in great detail as to the factual findings but that upon which the decision principally turned in the circuit court was the twenty-ninth, which was as follows:

"The Master erred in failing to find that the burden of overcoming the presumption that the title deed from Mrs. Bates to Bates, being without consideration, was void because of undue influence over Mrs. Bates, and abuse by him of the trust relationship existing between husband and wife, had not been met, and because there is no evidence to show that Mrs. Bates had been fully advised of the effect and consequences of the execution and delivery of the title deed."

The report of the Master was reversed by the Court for the failure of it to give weight to the presumption in equity against the validity of a voluntary conveyance from wife to husband. 30 C. J. page 696, 41 C. J. S., Husband and Wife, § 148. The judgment was for cancellation of the deed from Mrs. Bates to Bates and that the subsequent deed from her to her daughter is valid.

The appeal of Bates to this Court is upon numerous exceptions which are presented in appellant's brief as raising three questions, stated as follows:

I. Did plaintiff's evidence show, as a matter of law, that the deed of Blanche S. Bates to Carl M. Bates, dated February 24, 1947, was executed and delivered as the result of coercion, duress or undue influence exercised by him upon her?

II. Was there consideration for the deed dated February 24, 1947?

III. Is the deed to Sarah J. Salter dated May 22, 1947, valid?

The first of these, upon the answer to which the case turns, contains an inept clause. The query is not what the evidence shows "as a matter of law." The court's duty is to examine the evidence in the light of the applicable law and determine whether appellant, who was the plaintiff below, made out his case by the preponderance or greater weight of the evidence and in compliance with the pertinent rule of proof in such a case. The court has jurisdiction, and therefore the duty, to find the facts in this, an equity cause. Art. V, Sec. 4, Constitution of 1895.

The respondents submitted an additional ground for sustention of the judgment of the lower court, that the exceptions to the Master's findings of fact should have been sustained by the trial court. It will not be necessary to separately consider the sustaining ground.

Summary disposition may be made of questions II and III. The only seriously contended valuable consideration for the deed under attack consists of the contribution by appellant to the cost of the tract of land and improvements, of which that in dispute is about one-third of the whole area. The contribution to the purchase price was $500.00 of the total of $3,500.00; and it may be safely said from the testimony that appellant also contributed about one-half of the expense and labor which went into the improvements, including the little home. But the title to the property was in the wife's name, of which appellant had complete knowledge, indeed he directed it so. In these circumstances, the law is settled that the part of the purchase price and the improvements contributed by appellant, the owner's husband, are presumed to be gifts to his wife, and there is nothing in the evidence in this case to rebut the presumption. 41 C. J. S., Husband and Wife, § 153, page 626; *Caulk v. Caulk,* 211 S. C. 57, 43 S. E. (2d) 600, and authorities there cited.

Question III is of no consequence in view of the decision hereinafter upon the main question. The attack upon the

deed to Sara Salter was only upon the ground of the alleged validity of the prior deed to appellant, of which latter Sara had actual notice at the time of the conveyance of the premises to her. The decision of invalidity of the deed to appellant will leave nothing of his ground of attack upon the deed to Sara, his stepdaughter. This anticipates answer adverse to appellant upon his first question which in this manner is now reached.

It has been very difficult to extract the truth from the testimony. However, we think that the trial judge hit upon the proper course and decided the case upon the evidence of appellant and his witnesses. Consideration of it is convincing of the controlling fact that the conveyance to him resulted from undue influence upon his wife, the grantor. It may be said that this influence reached its fruition in and by his absence from home and her desire to procure his return. All of the evidence negatives uninfluenced generosity on her part. He testified that at the interview between them on February 24, arranged by her, she handed him the deed and told him that she had had some of the land "changed" to him and that she wanted him to return if they would "quit the foolishness." He further gave this additional version: "She handed me the deed and said I deeded you five acres. I said I do not want it. She said I love you and lets get together and live right together. I said no we had better stay apart and you go your way and I will go my way. Finally, we decided to agree and I went on back down there." He said that he and his wife had "fusses" all of their married life but denied that there was any increase in them after the acquisition of the property solely in her name.

Witnesses for appellant were Mr. and Mrs. Porter McCuen, whose testimony has the ring of veracity. They were near neighbors of the Bates and he took refuge with them after he received the head wound. Mr. McCuen took him

to a hospital and brought him back to the Bates home where appellant obtained his automobile and drove off, presumably to the tourist camp where, according to the weight of the evidence, he spent several nights thereafter. McCuen testified that about two weeks after the fracas Mrs. Bates came to him on a Sunday morning in tears and asked him to find her husband and "tell him if he will come back I will deed him five acres of that land." McCuen was unable to immediately locate Bates despite search for him in Greenville, but he located him at his work by telephone the next morning (which was the day of the subsequent delivery of the deed) and told him that if he would return to his wife she would convey to him five acres of the land which included the home. Upon McCuen's return to his home after work that night he saw Bates' car at the Bates home. Mrs. McCuen corroborated her husband's evidence with reference to Mrs. Bates' visit to their house and the latter's request of McCuen. She referred to the acreage offered to be conveyed by Mrs. Bates as the "middle five acres of land" which was that upon which the Bates home was located. Mrs. McCuen said that in the conversation in her presence in which Mrs. Bates asked McCuen to deliver the message to her husband, that Mrs. Bates said she hated to convey the land to her husband; further that afterward Mrs. Bates told her that she discovered that Bates had not recorded the deed to him, whereupon she executed a conveyance to her daughter, Sara.

This necessarily long opinion will not be further burdened by additional repetition of the testimony, although we think that it could thereby be factually strengthened. That which has been quoted is, as already said, taken from the evidence offered by appellant, from which we think that the only reasonable inference is that the conveyance was proposed and made by Mrs. Bates to appellant in order to induce him to return to his marital duties and it was that immediate influence upon her which caused her to make the deed. In

these circumstances it cannot be reasonably said that the deed was voluntary. Certainly the evidence offered by appellant is insufficient to overcome the presumption of invalidity which accompanies a deed given under such circumstances. It does not negative undue influence and coercion, and does not carry conviction that Mrs. Bates was uninfluenced by fear of him or by the desire to regain him as her husband. He owed her the performance in proper manner of his conjugal duties. In this light the deed was a sort of bribe of Bates which moved him to resume his marital relations and responsibilities. It is for that reason necessary that the deed be declared invalid. The authorities are clear that there is a requirement in such cases that there be an affirmative showing by the grantee-husband that the deed was entirely voluntary and the act free from his influence in its execution. They will be reviewed at some length because the principle is an old and important one.

In 41 C. J. S., Husband and Wife, § 146, it is said that: "Since the wife ordinarily has no duty to support the husband or to provide a maintenance for him * * *, the wife's deed stands on a different footing in equity than does the deed of the husband; and equity will scrutinize more closely a conveyance from the wife to the husband than an ordinary conveyance." And on page 640 of the same text, in Sec. 158, is the following: "Ordinarily the burden of showing a gift from the wife to the husband rests on the person or persons claiming it, such as the husband or his heirs or representatives." It is noted in this work that in some States there are statutes which prescribe the presumption of undue influence in such cases. In 26 Am. Jur. at page 876, Hsuband and Wife, Secs. 268, 269, it is stated: "The relationship of husband and wife is generally regarded as of a confidential nature. * * * It is recognized that the most dominant influence of all relations is that of husband over wife, and contracts between them, to be valid, particularly as to her, must be fair and reason-

able and voluntarily and understandingly made." And Sec. 273 of the same text (26 Am. Jur. 880) is in part as follows: "There is some difference of opinion as to presumption and burden of proof with respect to fraud, undue influence, and overreaching, exercised by a husband on his wife, in a conveyance or transfer of her property to him or a release by her of her interest in his property. Many courts take the view that any advantage to the husband from such a transaction is presumed to have been obtained by fraud, undue influence, or overreaching, and that the burden of proof·is on him or his representative to prove the absence thereof * * *." (This court has long been among the "many courts" referred to in the latter quotation, which will be demonstrated by reference to our leading cases upon the subject.) The rule is stated another way in the latter portion of the same section (26 Am. Jur. 880, 881) in this wise: "On the one hand, the view is taken that when a woman makes a gratuitous transfer of property to her husband, it must be made to appear, in order to sustain the transfer, that it was fair and proper and that she acted freely and deliberately * * *."

It is gathered from the foregoing that the law in some States is other than in ours, that is, there is in those jurisdictions no expressly recognized presumption of undue influence in the cases of conveyances from wife to husband, but with reference to those courts it is concluded at the end of an annotation in L. R. A. 1915-C, 772, as follows: "All the courts agree that the whole transaction will be closely scrutinized, and if evidence of fraud, coercion, or undue influence is found, the conveyance will be set aside, which would seem to indicate that, while the burden of proof is upon those attacking the validity of the transfer, slight circumstances indicative of fraud, coercion, or undue influence will suffice to invalidate the deed unless full· explanation, removing the suspicion, is made by those defending the le-

gality of the transaction." There is therefore little difference between even that view and ours.

Something of the history of the rule we follow is found in the annotation in 31 L. R. A., N. S., 844. It derives from the early common law where there could be no conveyance from spouse to spouse because of their unity. *Garvin v. Ingram,* 10 Rich. Eq. 130. It survived in its present form the obsolescence of that original view, and the true reason of the present rule is that a wife is naturally under the influence of her husband and is thereby deprived of freedom of volition and should not be bound by a conveyance of her property to him in the absence of convincing evidence that despite his usual dominance she acted freely and voluntarily, with full knowledge of the effect of her act. An excellent discussion is contained in the opinion in *Peyton v. William C. Peyton Corp.,* 1939, 23 Del. ch. 321, 7 A. (2d) 737, 123 A. L. R. 1482. We shall turn now to the decisions of our own courts.

*Converse v. Converse,* 1856, 9 Rich. Eq. 535, contains a valuable exposition of the law. (It is of historical interest that the plaintiff was the sister of the former Angelica Singleton of old Sumter District who was the daughter-in-law of President Van Buren and his hostess at the White House. He was then a widower.) Marital difficulties developed years after the conveyances by the wife for the benefit of the husband, which were attempted to be set aside in that action for coercion and undue influence. The climax was a physical encounter, similar to that in the instant case except that the wife there got the worst of it while the husband did here; in both cases a daughter of the wife by a former marriage came to their respective mothers' aid. The Chancellor made clear the importance of the time element in the case when he said: "It is but too apparent to the Court that the defendant has acted badly and that his conduct toward the plaintiff, in some of the stages of their matrimonial life, was marked by unkindness, over-

bearing and cruelty. But these passages in their married life were long posterior to the deed of appointment now sought to be set aside; at the date of which, and for several years subsequent, there does not appear to have been any serious disturbance of the domestic relations between the plaintiff and defendant, or of misconduct on his part. If the deed was originally unaffected by circumstances that would vitiate and defeat it; if it was in its inception valid, I cannot perceive upon what principle of law, or equity, it can be invalidated by circumstances *ex post facto*."

The general law applicable was stated as follows: "It is equally well settled (though not by such a series of cases) that where the wife, under a general power of disposition, bestows her separate estate upon her husband, though the prescribed forms of conveyance be punctiliously observed, the Court will regard the transaction with jealousy, and look into it with a rigid scrutiny, under an apprehension that the gift to the husband may have been extorted by an abuse of the marital power and authority. And if it appear that the gift has been wrung from the wife by compulsion, or a wrongful exercise of authority, by duress, physical or moral, or by any undue means, or influence, the deed will be set aside, and the wife be restored to her original rights. As to the correctness of these principles the Court is unanimous." And further: "It is easy to say, that if the gift is obtained by compulsion, duress, or fraud, it is void; all deeds and contracts are void for those causes. But gifts from the wife to the husband may be set aside for acts or means not falling within those definitions; in other words, such gifts to the husband may be set aside for causes which would not call for the interposition of the Court in similar transaction of the wife with strangers. This is on account of the suspicion with which the Court regards the dealings of the husband with his wife, for his own benefit. What will constitute the undue means or influence, which will invalidate the gift, cannot be defined with precision. In

a case not amounting to compulsion or fraud, the illegitimacy of the means or influence employed, must, I apprehend, from necessity, be left to the sound judgment of the Court."

There was cited in support of the decision against invalidating the conveyances in that case the fact that they were not unlike a settlement which a court of equity at that time would have made to a husband out of his wife's property, which we may now consider to be a relic of the ancient law and, of course, no such reason exists at this time for the upholding of the conveyance under consideration by Mrs. Bates to appellant. Upon appeal to the Court of Errors from the Court of Appeals in Equity, the decision was apparently six to three in favor of sustaining the conveyances and we note that the illustrious Judge O'Neall spoke for the minority and against the validity of the conveyances.

The rule was vigorously announced and applied in *Way v. Union Central Life Insurance Co.,* 61 S. C. 501, 39 S. E. 742, in which Chief Justice McIver wrote the opinion. The case dealt with the assignment without consideration to her husband of a life insurance policy by the wife-beneficiary. The principle was reproduced from *Butler v. Haskell,* 4 Desaus. 651, at page 684, where it was referred to as quite clear, as follows: "Where a transaction between husband and wife whereby the husband acquires an advantage either for himself or his estate comes under review in a court of equity, the burden of proof is upon the husband, or those who represent his estate, to show the utmost fairness in the transaction and that the wife was fully advised as to what she was doing and the effect of it." Numerous older authorities (texts and decisions) were cited in support and the assignment was set aside. It was elaborated that there is a presumption of fraud and undue influence in such cases and it is incumbent upon those who seek to avail themselves of such advantage (to the husband-grantee or his estate) to show to the satisfaction of the court that

such presumption is not well founded. The reference in *Butler v. Haskell, supra,* is to the relation of principal and agent, similar in this respect to husband and wife.

*McElveen v. King,* 88 S. C. 346, 70 S. E. 801, involved an alleged gift by wife to husband of a bank check for about $6,000.00, the proceeds of the sale of her land. It was held that the evidence was insufficient to establish a gift because the fiduciary and confidential relation between husband and wife placed the burden of proof upon the defendant in that case to establish that the gift was fairly made. *Way v. Union Central Life Insurance Company, supra,* 61 S. C. 501, 39 S. E. 742, was cited with approval and the rule of it was called a salutary principle.

In contrast, the usual rule of burden of proof was applied in *Brown v. Brown,* 44 S. C. 378, 22 S. E. 412, to the attack upon a conveyance *from husband to wife,* the opposite of this case; but it was executed under similar circumstances of separation. However, it appears that the Statute of Limitations was a complete bar of the claim in that case. See upon the distinction between deeds from husband to wife and those from wife to husband the quotation from 41 C. J. S., Husband and Wife, § 146, page 617, *supra.* The reasons for the distinction are patent and strong —the legal duty of support of the wife rests upon the husband and he is ordinarily the dominant fiduciary.

No sound reason appears for abandonment of this salutary rule by reason of the modern "Married Women's Acts" Code 1942, § 8572 *et seq.* The relevant constitutional and statutory provisions in the law of this state were stated in *Bryant v. Smith et ux.,* 187 S. C. 453, 198 S. E. 20, and Re Johnson's Estate (*Johnson v. Crutchfield*), 198 S. C. 526, 18 S. E. (2d) 450. While they effected revolutionary changes in the personal and property rights of married women, they did not alter the intimacy of the family relation or reduce the physical and

spiritual domination of a wife by her husband which ordinarily exists in this most confidential of human relations. Appellant's argument to the contrary is not convincing. Instead, the principle of equity at stake constitutes a valuable right of a married woman and repudiation of it would run counter to the purpose of the liberalizing legislation affecting the rights of married women. It is not "emancipation" to be sheared of a protective principle of equity. The high value of the principle to a married woman is illustrated by this case and those we cite.

Extensively argued by appellant is the position which concedes that there was coercion before, but asserts that it was interrupted by, and came to an end upon, appellant's separation from his wife, and the separation continued for two weeks before execution and delivery of the deed, according to the testimony of him and his witnesses. The following is from the brief: "But be the conclusion what it may with regard to demands for part of the property or the practice of 'threats and violence' by the plaintiff against his wife, the fact is that such influence, whatever it was, as before stated, ceased and became inoperative on the afternoon or night of February 10, 1947, and remained inoperative until February 24, 1947. There was, therefore, no causal relation between the alleged demand for part of the property and the 'threats and violence', on the one hand, and the execution and delivery of the deed, on the other." Again, from a later portion of the brief: "We here repeat what we have heretofore said, in substance: That whatever was the conduct of Bates toward his wife, it all ceased on February 10, 1947, the night of the 'big fight', as characterized by defendants' counsel, and continued inoperative until after the execution and delivery of the deed on February 24, 1947. Just as the conduct of Reverend Converse was posterior to the deed in that case, the conduct of Bates—whatever it might be—was anterior to the deed in the case at bar."

These observations overlook that the coercion which went on before the separation was probably aggravated by the latter. A wrong brooded over, whether real or imagined, usually becomes magnified in the victim's mind. In this view, whether appellant was justified in leaving his wife after the altercation in which he was injured (she says in defense of herself and daughter) is unimportant; the fact is that he did leave her; and his evidence shows that the deed was for the purpose of inducing him to return to the family home. That it did is an inescapable inference from the testimony of appellant himself. In this connection it is important that every wife is ordinarily entitled to the comfort and companionship of the presence of her husband in the home. In this case the influence of the absence of the husband was the immediate cause of the making of the deed, and that is improper and should vitiate it.

How can it be said that a wife voluntarily conveys her property to her husband when she does so in order to influence him to return to his marital duties? The influence is none the less for fault of the wife which caused the husband to temporarily leave the home, if there was such. It is easy to conceive of a grasping husband who would leave his home for the purpose of exacting a deed from his wife of her property as a condition of his return, and he might well incite a quarrel to furnish him a pretext to leave. These may or may not be the facts of this case. Fortunately, under the conflicting testimony, they need not be determined.

The case is distinguished from the result of the leading authority of *Converse v. Converse, supra,* 9 Rich. Eq. 535, for there the transactions and communications between the husband and wife which were contended to constitute undue influence on the part of the husband, arose and occurred long after the execution by the wife of the instruments which were attacked in that action. Here, the contrary is true. The applicable law in that case and this is the same; the results differ because the facts do.

There was no evidence of independent, legal or other advice before Mrs. Bates made the deed, which is, under many authorities, essential to free and voluntary action in such cases. The only proof was that an attorney of her selection and employment prepared the deed which she executed in his office and there was no evidence that she consulted him and received his advice as to her rights and the effect of her action. Only respondents' counsel tried to show the substance of her interview with the attorney, to which objection was sustained, so the record is bare in this respect. It is not intended to say, because decision of the point is unnecessary here, that independent advice legal or other, is a *sine quo non* of validity in all cases of conveyance of wife to husband, but it is unquestionably a circumstance which, when it exists, militates for validity, and when it does not, as in this case, its absence is of importance. There is a valuable comment note on the subject in 123 A. L. R. 1505. See also *Way v. Union Central Life Insurance Co., supra,* 61 S. C. 501, 39 S. E. 742.

The exceptions are overruled and the judgment affirmed.

BAKER, C.J., and FISHBURNE, TAYLOR, and OXNER, JJ., concur.