J. H. Anderson v. Commissioner.
J. H. Anderson v. Commissioner
Docket No. 14754.
United States Tax Court
1948 Tax Ct. Memo LEXIS 48; 7 T.C.M. (CCH) 811; T.C.M. (RIA) 48229; November 4, 1948
*48 Amount of petitioner's loss from involuntary conversion resulting from destruction by fire of residence and contents owned jointly by petitioner and his wife determined from the evidence. On the evidence, held, petitioner is entitled to a deduction for rent paid to his wife for use of her land. J. Alexander Neely, Jr., Esq., Anderson, S. C., for the petitioner. Newman A. Townsend, Jr., Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: The respondent determined a deficiency of $3,115.04 in petitioner's income tax for 1943. This involved adjustments for the year 1942 as well as 1943, and included the "unforgiven" part of the assessment for 1942. Respondent's amended answer seeks an increase in the deficiency *49 to $5,161.77. The issues are (1) the amount deductible by petitioner on account of a loss resulting from a fire, and (2) whether petitioner is entitled to deduct $1,500 which he claimed he had paid to his wife as farm rent in 1943. Findings of Fact The petitioner was a resident of Anderson County, South Carolina, during the calendar years 1942 and 1943. He and his wife, Mary Norris Anderson, were married in 1892. For the calendar years 1942 and 1943 petitioner filed his income tax returns with the collector of internal revenue at Columbia, South Carolina, on the accrual basis. His wife filed separate returns for the respective years. In the taxable years the petitioner owned some ten or twelve store buildings, the rentals from which were the principal source of his income. During 1943 he sold a store building located in Charleston, South Carolina, and realized a profit of $5,167.73 thereon. The building was acquired about 1917, and depreciation had been claimed and allowed upon it in prior years. Petitioner reported half the profit as long-term capital gain. Petitioner and his wife resided on a farm some six miles from Anderson, South Carolina. The farm lands amounted to *50 about 1,000 acres. Title to a tract of about 322 acres, on which the house was located, was held by petitioner and his wife by conveyance from J. W. Norris, Mrs. Anderson's father, in 1893. The remainder of the farm was inherited by petitioner's wife from her father about 1900. The residence of petitioner and his wife was built about 1899 or 1900. It was of frame construction, two stories, and contained ten rooms. A large porch extended across the front and part of the sides. Petitioner built the house in large part of lumber cut from the farm. He estimated the actual money outlay of construction at $7,119.64 and considered the total cost about $10,000. The house had a slate roof, oak flooring and oak framing and sills. The principal first floor rooms ranged in size from 20 X 18 feet to 22 X 18 feet with a center hallway 12 feet wide by 38 feet in length, with 11-foot ceilings. The second floor main rooms and hallway were of corresponding size, with 10-foot ceilings. The first floor rooms, including the hallway, were finished in white oak, with a 4-foot wainscoting and oak-paneled ceilings, except for the dining room ceiling which was metal. The house was kept in good repair. There *51 was no central heating system. The house had several fireplaces and was heated by a woodburner downstairs and by oil heaters upstairs. Electricity had been installed. The petitioner listed the house at $500 and contents at $50 for purposes of local taxes. The house was completely destroyed by fire on December 24, 1943, with almost all its contents. The petitioner recovered $4,000 insurance on the house and $1,000 on the contents from insurance taken in his name. On his return petitioner stated the loss on the house to be $16,000 ($20,000 less $4,000 insurance received). He gave the March 1, 1913 value as $15,000 and claimed a loss deduction in that amount without any deduction for insurance received. He claimed a loss deduction on the contents of $9,000 ($10,000 less $1,000 insurance received). The house and its contents were jointly owned by petitioner and his wife. The value of the house at the time of the fire was $7,500, and the value of the contents destroyed was $6,450. These values were not in excess of the March 1, 1913 values, or the cost of any items acquired after that date. Petitioner paid $1,500 to his wife in 1943 as rent for the part of the farm, title to which *52 was in her name. Opinion The petitioner claimed a casualty loss on his return for 1943 as a consequence of the destruction by fire of the residence in which he and his wife lived. The fire resulted in the total loss of the residence and contents except for a few items of furniture saved. Petitioner claimed a loss on the building of $15,000, which he considered its March 1, 1913 value, and claimed a loss of $9,000 on the contents, valuing them at $10,000 and deducting $1,000 of insurance collected. He valued the building at $20,000 at the time of the fire. The respondent determined the value of the house at the time of the loss to be $6,500, deducted $4,000 insurance collected and computed a net loss of $2,500 on the house. He valued the contents at $4,925, from which the deduction of $1,000 in insurance left a net loss of $3,925. The total of $6,425 was treated as a long-term capital loss in the notice of deficiency. In the amended answer, respondent asserted that the house and contents were owned equally by petitioner and his wife and therefore only half the loss allowed in the notice of deficiency is allowable to petitioner, and that under section 117 (j) this loss and the gain *53 petitioner realized on the sale of a store building in the same taxable year must be considered together. The land on which the house was built was deeded to petitioner and his wife by his wife's father in 1893. The house was built by petitioner. Petitioner contends that the house was his even though it was built on jointly owned land, and that the loss from its destruction was his loss. In Caulk v. Caulk, 43 S.E. (2d) 600, the Supreme Court of South Carolina held that where a husband made improvements on land which he knew belonged to his wife, the law presumes a gift to her of all such improvements; and in Edwards v. Edwards, 185 S.E. 904, a West Virginia case, it was held that improvements placed by a husband on realty jointly owned by himself and his wife became their joint property. There is no evidence of any agreement between petitioner and his wife that the house should belong to the petitioner alone. We have found that the house was jointly owned by petitioner and and his wife. The respondent contends that the contents of the house were equally owned by petitioner and his wife. On brief, petitioner concedes that the contents were so owned, and further *54 concedes that the house was not used in part for business purposes, as he originally contended. The insurance on the house and contents, although taken in petitioner's name, was for the joint benefit of petitioner and his wife. Therefore, half the net loss is petitioner's loss. The measure of a casualty loss on non-business property, deductible under section 23 (e) of the Internal Revenue Code, is the difference between the fair market values of the property immediately preceding, and immediately after, the casualty, but not in excess of the cost or March 1, 1913 value, and diminished by insurance realized. Where property has actually depreciated in value, depreciation should be considered in determining the value, regardless of the fact that it was not deductible for income tax purposes in prior years. Helvering v. Owens, 305 U.S. 468. We have considered the evidence as to the cost of the house, its value on March 1, 1913, and its value at the time of the fire and find that at the time of the loss it had a value of $7,500, which is less than its March 1, 1913 value. In determining the value we have considered the opinions expressed by certain *55 witnesses that the house had a higher value, and have taken note of the qualifications of these witnesses and the extent of their familiarity with the house, and of the age and condition of repair of the building. Insurance of $4,000 was recovered on the building, leaving a loss of $3,500 thereon. The petitioner contends that the value of the furniture and furnishings destroyed was $10,000 while the respondent fixed it at $4,925. The petitioner introduced in evidence a list, prepared by his wife, of the furniture and furnishings present in the house at the time of the fire, identifying the items inherited or given to them, stating the cost to the best of her recollection, placing an estimate of value upon each item, and stating the approximate year in which it was acquired. Over 260 items are listed. Many were antiques. The list gives $1,394 as the estimated cost of items inherited or given to the Anderson, $7,908.82 as the estimated cost of items they purchased, and $11,203.23 as the estimated value of all items at the time of the fire. We have considered all the evidence relative to the value of the contents destroyed, and have found their value immediately before the fire to be *56 $6,450. Deducting $1,000 of insurance collected leaves a net loss on the contents of $5,450. The petitioner's stores from which he derived rental income were property used in his trade or business and subject to the allowance for depreciation, and therefore were not capital assets. George S. Jephson, 37 B.T.A. 1117; John D. Fackler, 45 B.T.A. 708, affirmed, 133 Fed. (2d) 509. Under the provisions of section 117 (j) of the Internal Revenue Code, the gain from the sale of one of these stores in 1943 and petitioner's loss from the destruction of the house by fire must be considered together, and effect given to the net gain or loss resulting. Under section 117 (j) (2) (B)[1] a loss upon the destruction of a capital asset, such as a residence, held for more than six months is considered a loss from an involuntary conversion. Where, as here, the taxpayer has a gain from a sale of property used in the trade or business, the gain and the loss are considered together, as required by section 117 (j) (2). If the net result is a gain, it is treated as a long-term capital gain. If a loss, it is not treated as a capital loss. This *57 adjustment may be cared for in the computation under Rule 50. *58 Petitioner deducted $1,500 on his returns for 1942 and 1943 as expense of rent of farm land. His wife filed separate returns for the same years reporting $1,500 each year as rent received and showing no other income. Respondent, by amended answer, claims that petitioer did not pay such rent to his wife. The respondent has the burden of proof on this issue. The amended answer was filed at the hearing, which was after the depositions of petitioner and his wife had been taken, and was evidently prompted by statements contained in the depositions. The evidence in the depositions apparently contains some conflicting statements on this point. The basis of respondent's action appears to be Mrs. Anderson's statement that petitioner did not pay her any rent. This testimony evidently refers to the land deeded to her and her husband jointly by her father. She said she received rent from the land she inherited from her father and that the only land she inherited from him was the tract of some 680 acres, title to which stood in her name. She said that she had received these rents for many years. Petitioner said the $1,500 represented rent for the part of the farm which stood in her name. The *59 respondent has no met his burden on this issue. Decision will be entered under Rule 50. Footnotes
1. SEC. 117. CAPITAL GAINS AND LOSSES. * * *
(j) Gains and Losses From Involuntary Conversion and From the Sale or Exchange of Certain Property Used in the Trade or Business. - * * *
(2) General Rule. - If, during the taxable year, the recognized gains upon sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat of imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. For the purposes of this paragraph: * * *
(B) Losses upon the destruction, in whole or in part, theft or seizure, or requisition or condemnation of property used in the trade or business or capital assets held for more than 6 months shall be considered losses from a compulsory or involuntary conversion.↩