## 18191

Chester B. STEVENS, Jr., Appellant, v. Elizabeth Payne STEVENS, Respondent

(135 S. E. (2d) 725)

*Messrs. McEachin, Townsend & Zeigler,* of Florence, *for Appellant,*

*W. H. Caldwell, Esq.,* of Florence, *for Respondent,*

March 31, 1964.

LEWIS, Justice.

The plaintiff-husband seeks in this action to establish, through the equitable doctrine of a resulting trust, title to an undivided one-half interest in two lots and the improvements thereon located on Rosewood Drive, in the City of Florence, South Carolina, legal title to which is now in the name of the defendant, his wife. The lots in question were purchased on January 2, 1951, and title was taken in the name of the defendant. Thereafter, a house was constructed on the lots and the plaintiff and the defendant resided therein with their two children until about October 9, 1962, when, due to marital difficulties, the defendant vacated the premises, taking the two children and most of the furniture and appliances with her.

This action was instituted by the plaintiff in December, 1962. He alleged in his complaint that, although title to the property was placed in the name of the defendant at the time of purchase, he contributed fifty (50%) per cent or more toward the cost and improvement thereof, with the understanding of the parties that each would own a

one-half undivided interest therein. Upon these allegations, the plaintiff sought a determination that he was the owner of a one-half interest in the land and the improvements placed thereon. The defendant filed an answer in which she denied the material allegations of the complaint and alleged that (1) the lots and improvements thereon were paid for largely out of her earnings, (2) if the plaintiff contributed any part of the cost of the lots and the improvements, he did so with full knowledge that title to the property was in her name and as a gift to her by way of discharge of his marital obligation for support of his family, and (3) the claim of the plaintiff is now barred by the Statute of Limitations. All issues were referred to the Master in Equity for Florence County, who filed a comprehensive report in which he held that the plaintiff had failed to establish his claimed title to the property in question by clear and convincing evidence and recommended that the complaint be dismissed. Upon exceptions being filed thereto, the Resident Judge of the Twelfth Circuit affirmed the report of the Master and ordered the complaint dismissed. From the concurrent adverse findings of the Master and Circuit Judge, the plaintiff has appealed.

The plaintiff claims that he contributed at least one-half toward the purchase of the property and the construction of the improvements thereon under circumstances which gave rise to a resulting trust in his favor and that the court should so decree. The burden was upon the plaintiff to establish the alleged resulting trust by clear, definite and convincing evidence. *Privette v. Garrison,* 235 S. C. 119, 110 S. E. (2d) 17; *Green v. Green,* 237 S. C. 424, 117 S. E. (2d) 583.

The master and the circuit judge concurred in the factual finding that the plaintiff had failed to establish the alleged resulting trust by the required degree of proof. Whether or not their concurrent findings upon this basic issue should be sustained is the sole question to be determined in this appeal. This issue must be

approached with the well-settled principle in mind that concurrent findings of fact by the master and circuit judge in an equity case will not be disturbed on appeal unless unsupported by the evidence, or clearly against the weight of the evidence when viewed in the light of the degree of proof required.

The parties were married on November 22, 1941. Both were then, and have been since, gainfully employed, the plaintiff with the Atlantic Coast Line Railroad and the defendant as a cosmetologist. In 1947 the defendant purchased a beauty salon in the City of Florence with the aid of a Two Thousand ($2,000.00) Dollar loan from her mother. The beauty salon was operated until 1950 when it was resold to the original owner for $6,000.00, the proceeds being deposited in the joint bank account of the parties. On January 2, 1951, the two lots in question were purchased from proceeds derived from the sale of the beauty salon, the title to the lots being placed in the name of the defendant. A contract was signed by both parties on December 17, 1951 with a contractor for the construction of a residence on the lots at a cost of approximately $18,000.00, $12,000.00 of which was financed through a loan from a Building and Loan Association in Florence. The parties resided in this residence until their separation in 1962. Payments on the mortgage indebtedness have been made largely by checks signed by the plaintiff against the joint bank account of the parties. Admittedly the plaintiff has made financial contribution toward the construction of the improvements on the property. The defendant denies, however, that the plaintiff contributed to the purchase of the property or that there was any agreement as to joint ownership thereof.

The testimony shows that the marriage of the parties was apparently a normal one until some time in 1962, when their marital difficulties arose. Although the plaintiff claims that it was understood he would be a "50 per cent owner in the property," it seems that the fact that title to the

property was in the name of the defendant did not become of major importance until the family difficulties began.

The assertion by plaintiff that he contributed one-half of the purchase price of the property is based largely upon his contention that he and the defendant were partners in the operation of the beauty salon, which was sold in 1951 and a portion of the proceeds used to purchase the lots in question. In other words, he says that the purchase was made with joint funds derived from the sale of the partnership business with the understanding between the parties that they would own the property jointly. In determining the issues, the lower court found it unnecessary to determine whether the parties operated the beauty salon as a partnership, or the amount of the contribution made by the plaintiff toward the purchase and improvement of the property, since the conclusion was reached that such contribution as might have been made by the plaintiff was clearly intended as a gift to the defendant with no intention at the time to retain title in himself. We think that the record sustains the conclusion of the lower court.

Assuming that the plaintiff contributed fifty (50%) per cent or more toward the purchase of the property and its improvement, since the conveyance was made to his wife for whom he was under a legal obligation to provide, the presumption is that his contribution toward the purchase thereof was a gift to her. While such presumption is one of fact and not of law and may be rebutted by parol evidence or circumstances showing a contrary intention, it is of itself a circumstance sufficient to raise an inference that a gift was intended and to cast the burden upon the one seeking to enforce a resulting trust, here the plaintiff, to prove that he did not intend to make a gift to his wife. This presumption of a gift also applied to improvements made by the husband upon property which he knows belongs to his wife. *Caulk v. Caulk,* 211 S. C. 57, 43 S. E. (2d) 600.

Without further reviewing the testimony, we think that the expressed purpose of the plaintiff in allegedly having the property conveyed to his wife, instead of jointly, clearly shows that there was no intention on his part to retain any vestige of title in himself and requires affirmance of the judgment of the lower court. When asked if there was a discussion between him and his wife as to how title to the property should be placed, the plaintiff testified as follows: "We discussed the fact that we wanted to build our lifetime home there, and raise our children there, and have a lifetime home there, and we would put it in her name, due to the fact I was a locomotive engineer, and at that time there were quite a number of suits outstanding around the country against locomotive engineers along with the railroads, in regard to accidents where railroads and engineers were sued jointly. I did not want our home taken away from us—my children's home, her home and my home—in some judgment the courts might make in North Carolina, South Carolina or Georgia, where I operated a locomotive." He stated further in his testimony: "The understanding was we did not want to be sued and lose the whole thing."

The plaintiff testified, therefore, that title was placed in the name of the defendant for protection against possible judgments that might arise against him in his occupation as locomotive engineer, so as to make more secure the home for his family. The purpose which motivated the placing of title to the property in the name of the defendant, as stated by the plaintiff, was totally inconsistent with his present claim that he intended to retain title in himself to a one-half interest. Taking the plaintiff's version of the transaction as true, which is denied by the defendant, it is apparent that title was placed in the name of his wife as a gift so as to relieve the property of any obligations that he might create in his business and thereby promote the family security. If this was the purpose, and he said that it was, it could have been accomplished only by divesting

himself of every semblance of title. It must be presumed that he intended that the conveyance to his wife would accomplish such purpose.

At the time of the purchase of the property there was no rift in the domestic life of the parties. The subsequent marital difficulties have no doubt changed the attitude of the plaintiff, but such cannot change the legal effect of his prior acts. As stated in *Caulk v. Caulk, supra,* 211 S. C. 57, 43 S. E. (2d) 600: "At this time apparently the domestic life of this couple was harmonious and it was reasonable to suppose that appellant would participate in the enjoyment of the use of the property. They have now separated. Respondent claims that appellant deserted her. But regardless of the cause of this separation the absolute gift which appellant made cannot now on account of events subsequently transpiring be metamorphosed into a trust. 'As long ago as *Villers v. Beaumont,* 1 Vern. 100, it was determined, that if one makes a gift of which he afterwards repents, the Court has no right to free him from the fetters with which he has voluntarily bound himself, but he must lie down in his own folly; and the doctrine of that case is law to this day—*Francis' Ex'rs. v. Lehre's Ex'rs.,* 1 Rich. Eq. 271—and always will be, as long as law is founded upon reason and good sense.' *Reilly, et al. v. Whipple,* 2 S. C. 277."

The plaintiff has petitioned that we overrule or modify the principle that a presumption of a gift arises when a husband places property in his wife's name, or makes improvements on property with knowledge that it is in her name, as set forth in the following cases: *Caulk v. Caulk, supra,* 211 S. C. 57, 43 S. E. (2d) 600; *Bates v. Bates,* 213 S. C. 26, 48 S. E. (2d) 612; *Legendre v. South Carolina Tax Commission,* 215 S. C. 514, 56 S. E. (2d) 336; *Clanton v. Clanton,* 229 S. C. 356, 92 S. E. (2d) 878; and *Green v. Green, supra,* 237 S. C. 424, 117 S. E. (2d) 583. We find nothing to warrant interfering with the principles followed in these cases.

All exceptions are overruled and the judgment of the lower court is affirmed.

TAYLOR, C. J., and MOSS, BUSSEY and BRAILSFORD, JJ., concur.