ROGERS v. ROGERS.

RESULTING TRUST.—A gift of land by a father-in-law to his son-in law, evidenced by an absolute deed, and charged in settlement of estate to the wife, is not a resulting trust. Resulting trusts defined and discussed.

Before BUCHANAN, J., Spartanburg, July, 1897. Reversed.

Action by W. Harvey Rogers and Nimrod Rogers *v.* Elias Rogers *et al.* Judgment for plaintiffs. Defendants appeal.

*Messrs. Duncan & Sanders,* for appellants, cite: *No resulting trust here:* 1 Bay, 450; 61 N. W. R., 237; 114 Mass., 366; 19 S. C., 134; 23 S. C., 266; 4 DeS., 516; 6 S. C., 90; 32 S. C., 595. *Plaintiffs barred by laches:* 43 S. C., 441; 6 S. C., 90; 47 S. C., 323; 42 S. C., 347. *Elias Rogers held lifetime interest in this land by marital rights:* 48 S. C., 28.

*Messrs. Nichols & Jones,* contra, cite: *Resulting or implied trust may be shown by parol:* Rev. Stat., 2693; 14 S. E. R., 419; 13 *Ib.,* 215; 4 *Ib.,* 692; 4 DeS., 487; 1 McC. Eq., *119; 23 S. C., 254; 24 S. C., 597; 34 S. C., 504. *No adverse possession:* 3 S. C., 34; 22 S. C., 361. *Elias Rogers had no marital rights:* 14 S. C., 609. *Point not ruled on below cannot be made here:* 40 S. C., 534; 24 S. C., 435; 47 S. C., 346. *Exceptions too general:* 30 S. C., 167; 43 S. C., 99; 46 S. C., 184, 95; 42 S. C., 281; 34 S. C., 344.

April 20, 1898. The opinion of the Court was delivered by

MR. JUSTICE JONES. This action was commenced December 9, 1891, by the plaintiffs, as heirs at law of their mother, Sallie Rogers, deceased, against their father, Elias Rogers, and the other heirs of Sallie Rogers, for the purpose of having a deed of sixty-eight acres of land, which was executed to Elias Rogers, May 14, 1861, by Nimrod Arnold, the father of Sallie Rogers, declared to be a deed of trust for Sallie Rogers and her heirs; also for an accounting of the rents and profits, and for partition. The cause was heard by Judge Buchanan at July term, 1897, and he decreed as follows: "From the testimony, I find that the land described in the complaint belonged to Nimrod Arnold, the father of Sarah Rogers; that the land was deeded to Elias Rogers, but that he paid nothing for it; but that Nimrod Arnold deeded the land, intending it as an advancement to his daughter, Sarah Rogers, wife of Elias Rogers, and that said Elias Rogers took the same under an implied trust for the use of his said wife. I hold that a resulting trust existed in the land described in the complaint in favor of Sarah Rogers, and that her heirs at law have an interest therein, and are entitled to partition in the same."

The testimony offered to show a trust was parol, and was taken by the master, over the objection of defendant's counsel. It does not appear that Judge Buchanan made any express ruling in reference to the objections to the testimony, but the record shows that the case was heard "on

the testimony as taken and reported by the master, and on objections and exceptions thereto as therein noted." The testimony offered was, substantially: (1) A book containing various accounts and entries in the handwriting of Nimrod Arnold, and among them the following: "Nimrod Arnold, 1860. No interest charged on these accounts, Sallie Rogers, in land, $400." (The testimony shows that Elias Arnold married Sallie Rogers in 1853, and moved on this land in 1860, under agreement or charge to pay rent. Nimrod Arnold deeded the land to Elias Rogers, May 14, 1861, and the deed contains this recital: "Possession given at my decease; no rent or charges exacted." Nimrod Arnold died in 1862 or 1863. Elias and Sallie Rogers lived on the place until the death of Sallie in 1886, and ever since that time Elias Rogers has occupied the place.) (2) A final settlement of the estate of Nimrod Arnold, in ordinary's or probate office, in 1871, in which Sallie Rogers was charged with $400 as an advancement in land. The citation for settlement was issued in 1864. Elias Rogers was named as a party, but was not served. Sallie Rogers was served. Both were present at the settlement, and made no objection to the settlement. (3) A witness testified as to a conversation between Elias Rogers and Sallie Rogers, in which Elias Rogers tried to get his wife to sell the land and move to Georgia, and she refused, saying that she could not consent to sell her land. Elias Rogers denied any such conversation. (4) A witness testified that she heard Nimrod Arnold say that he intended for his bodily heirs to have his property. (5) A witness testified that about 1870, Elias Rogers refused to pay a note due him as executor, and, when threatened with a suit, he said that the creditor could not get anything, as he (Elias Rogers) had nothing. The note, however, was, in fact, paid without suit. (6) Two or three witnesses testified that the land was spoken of in the community as Sallie Rogers' land. (7) Nimrod Arnold, one of the plaintiffs, testified that he heard his mother tell his father that this was her land, and he could not sell it

as long as she lived. Elias Rogers testified that Sallie
Rogers never claimed the land, and told him many times
that the land was his. (8) Elias Rogers testified that he
did not pay anything for the land; that he did not know
that his wife ever received anything from her father's estate
besides this land; that she "had not received any, as I know
of, only the land;" that he had been living on, working,
and paying taxes on the land as his own, without objection
from any one, until this suit, from 1861.

It is well settled in this State that the facts from which
the Court would infer a resulting trust may be established
by parol testimony, but it is also settled that such testimony,
to warrant such inference, must be clear and convincing.
*Taylor* v. *Mayrant*, 4 DeS. Eq., 516; *Billings* v. *Clinton*,
6 S. C., 102; *Ex parte Trenholm*, 19 S. C., 126; *Catoe* v.
*Catoe*, 32 S. C., 595; *Jones* v. *Hughey*, 46 S. C., 196; *Gaines*
v. *Drakeford*, 51 S. C., 38. If the object of the testimony
was to show a resulting trust in the land in favor of Sallie
Rogers, it certainly is far from being clear and convincing.
There is nothing in the language of the deed itself from
which a trust could be inferred. The deed recites: "for the
consideration of the sum of $400, to me in hand paid, by
Elias Rogers, * * * and for the said sum hath granted,
&c., unto Elias Rogers, to him, heirs, executors, adminis-
trators or assigns, &c. I, the said Nimrod Arnold, do
hereby bind myself, my heirs, executors, administrators,
and assigns, to warrant and forever defend the said planta-
tion or tract of land of sixty-eight acres, more or less, unto
the said Elias Rogers, his heirs and assigns, to have and to
hold in peaceable possession forever, against myself and
assigns, or any other person or persons claiming the same or
any part thereof." And there was no evidence that Sallie
Rogers, at the time of the purchase, paid the purchase
money or any part thereof. Even if it be true that Nimrod
Arnold gave this land to his son-in-law with the expecta-
tion that, in the settlement of his estate, the land, or its
value, $400, should be treated as an advancement to his

daughter, and it was afterwards so treated in the settlement
of his estate by the parties interested, that would not war-
rant a Court in presuming a trust, in direct conflict with
the interest of the grantor, as clearly expressed in the deed.
It may well be that the grantor, in view of the marital
rights of the husband, or in view of his confidence in his
son-in-law, to so use the land as incidentally to benefit his
daughter, preferred to do, just what he did in terms do, con-
vey both the legal and beneficial estate to his son-in-law.
In Pomeroy's Equity Jurisprudence, sec. 103, resulting trusts
are treated under two types or classes: (1) where there is a
gift to A, but the intention appears, from the terms of the
instrument, that the legal and beneficial estates are to be
separated, and that he is either to enjoy no beneficial interest
or only a part; (2) where a purchase has been made and
the legal estate is conveyed to A, but the purchase price is
paid by B. In Adams' Equity, pp. 31 to 33, a similar class-
ification is adopted. Perry on Trust, 3d ed., 138, treats re-
sulting trusts under five heads: (1) when the purchaser of
an estate pays the purchase money and takes the title in the
name of a third person; (2) where a person, standing in a
fiduciary relation, uses fiduciary funds to purchase property
and takes the title in his own name; (3) where an estate is
conveyed upon trusts which fail, or are not declared, or are
illegal; (4) where the legal title to property is conveyed,
and there is no reason to infer that it was the intention to
convey the beneficial interest; (5) where voluntary convey-
ances are made, or conveyances without consideration. In
10 Enc. Law, 5, the subject is treated under four heads, the
first, second, and third being the same as in Perry on Trusts,
and the fourth being a combination of the fourth and fifth
as classified in Perry on Trusts, viz: "(4) Where a convey-
ance is made without consideration, and it appears from the
circumstances that the grantee was not intended to take
beneficially." Nothing in the testimony brings this case
under any of the classifications above. The fourth class re-
lates to resulting trusts in the *grantor*, and it is not con-

tended that there is any resulting trust in the grantor in this case. The third class relates to cases where instrument indicates a trust, and in this case the deed not only does not indicate a trust, but, by its terms, expressly conveys both the legal and beneficial estate, for a consideration expressed. It is not suggested that any fiduciary funds were used in the purchase of the land, so as to bring the case under the third head. And since there was no evidence whatever to show that Sallie Rogers, or the plaintiffs, paid any part of the purchase money, if, in fact, any was paid by any body, we do not see how the case can fall under the first head. A gift of both the legal and beneficial estate by the father-in-law to the son-in-law is not inconsistent with an intention on part of all parties to treat the value of the land as an advancement to the daughter. If the grantor had delivered to his son-in-law $400, in 1861, as an advancement to his daughter, the money would have belonged to the husband, under his marital rights. If the transaction between the father-in-law and the son-in-law, when the deed was made, was to treat the consideration expressed in the deed as an advancement to the daughter, this is still perfectly consistent with a grant of both legal and beneficial estate to the grantee. But, further, it appears to the Court that the attempt was really to prove an express trust, as to which the rule is well settled that parol testimony is inadmissible. The complaint alleged no fact to bring the case within the rule relating to resulting trusts. In view of the foregoing, it is unnecessary to consider in detail the numerous exceptions of appellant.

The judgment of the Circuit Court is reversed, and the complaint is dismissed.