17727

**Dorothy R. GREEN, Respondent, v. Charles E. GREEN, Appellant**
(117 S. E. (2d) 583)

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, *for Appellant,*

*Messrs. Price & Poag,* of Greenville, *for Respondent,*

December 15, 1960.

Moss, Justice.

Charles E. Green, the appellant herein, and Dorothy R. Green, the respondent herein, were married in 1937, and divorced in 1958. It appears from the undisputed evidence in this case that on February 20, 1943, the appellant purchased a house and lot on Carroll Lane in Greenville, South Carolina, and title thereto was taken in the names of both the husband, Charles E. Green, and his wife, Dorothy R. Green, as tenants in common. The purchase price of the house and lot was $5,750.00. A mortgage for $4,700.00 upon the house and lot was executed by the parties to First Federal Savings

and Loan Association, and the sum obtained applied upon the purchase price. A second mortgage was executed by the parties to the seller of said house and lot for the sum of $350.00. These mortgages were to be paid in monthly installments, and the appellant made all of such payments. It is an admitted fact in the record that the respondent furnished no part of the purchase price nor did she furnish the money for or make any of the installment payments. It appears that there were born of the marriage three children and in 1950 it became evident that the home located on the above described property was inadequate in size, the same being a two bedroom dwelling, for the family of the parties. It was decided to acquire a different lot and to build a larger and more adequate dwelling, consonant with the needs of the Green family. In order to pay the purchase price of the new lot, the parties remortgaged the original lot to First Federal Savings and Loan Association, thereby refinancing the existing mortgage upon such premises and also obtaining $2,854.28, which was used in the payment of a part of the purchase price of the new lot. The new lot, also located on Carroll Lane, was purchased on September 18, 1950, for the sum of $3,000.00 and title thereto was taken solely in the name of Charles E. Green. The deed to the new lot was promptly recorded in the Register of Mesne Conveyances office in Greenville County, South Carolina. This original deed was brought to the home of the parties and placed in a box in which various papers of the parties were kept.

It further appears that on January 19, 1951, which was about four months after the purchase of the new lot, and the taking of the deed thereto in the appellant's name alone, that the original house and lot were sold by the parties. The net proceeds of this sale were $4,921.16 and these funds were deposited in the joint bank account of the parties.

Some months later the construction of a dwelling on the new lot was commenced, and on May 28, 1951, a construction loan in the sum of $8,500.00 was obtained, and the respondent renounced dower upon the mortgage securing such.

On September 26, 1951, a permanent loan of $16,000.00 was secured from C. Douglas Wilson & Company, the principal of this loan was payable in monthly installments. The respondent duly renounced dower on this mortgage. It appears that the appellant either made or furnished the money for the payment of all the monthly installments on this mortgage.

The respondent, in her complaint, asserts that by virtue of the fact that the funds derived from the mortgaging of the home jointly owned by her and the appellant, and the funds derived from the sale of the home jointly owned by the parties, went into the purchase price of the lot and the cost of the construction of the home erected thereon, entitled her to either a joint interest in the new house and lot or entitled her to a judgment for her monetary contribution thereto, and also that the Court should decree a resulting trust in her favor. The respondent demanded that the Court order the appellant to pay to her the amount of her monetary contribution out of the proceeds of any sale of the new house and lot.

The appellant duly filed an answer to the complaint asserting that there was no resulting trust in favor of the respondent and alleging, on the contrary, that he was the sole owner of the new house and lot and that he alone held title thereto for eight years and made all the monthly installment payments due on a mortgage thereon. He further contended that, if the respondent were entitled to any sum, it would be limited to only one-half of the proceeds of the funds obtained by the refinancing mortgage on the original lot, which said sum went to purchase the new lot. The appellant contended that in order for a resulting trust to arise, that it must arise because of a contribution of money made by the respondent at the time of the purchase of the new lot and not at any subsequent time.

By an agreement of the parties, this case was heard by the Honorable W. B. McGowan, Judge of the Greenville County Court. At the trial of the case testimony was taken and

various exhibits offered in evidence. Thereafter, on October 6, 1959, the trial Judge filed his Order holding that the respondent had, by way of resulting trust, an interest in the new property to the extent of $3,887.72. He further held that the proceeds derived from the refinancing mortgage on the original lot went into the purchase price of the new lot and that the net proceeds of the sale of the original house and lot went into the construction of the new home on the new lot, and that this was done pursuant to an agreement between the parties.

During the pendency of this cause, the new house and lot were sold for a total sum of $25,000.00, and under an appropriate order of the Court, one-half of the net proceeds of the sale, or $5,671.43, was deposited with the Clerk of the Court awaiting the further order of the Court. The trial Judge directed the Clerk of the Court to disburse the $5,671.43 so deposited by paying to the respondent $3,887.72, and that the remainder, in the amount of $1,783.71, be paid to the appellant.

Timely notice of intention to appeal was given by the appellant from the Order of the trial Judge.

It is well to determine how the trial Judge arrived at the amount which he awarded to the respondent. It is an admitted fact that by the refinancing mortgage given to the First Federal Savings and Loan Association by the parties, that they obtained $2,854.28, and of the sum so obtained $1,427.14 belonged to the respondent, and this was invested in the purchase of the new lot. The net proceeds from the sale of the old house and lot were $4,921.16, of which $2,460.58 was the property of the respondent. This sum was invested in the construction of the new house on the lot, title to which was in the name of the appellant. The sum of the two items, to which the respondent was entitled, amounts to $3,887.72. It was a question of fact for the trial Judge to determine as to whether this total sum went into the purchase of the new lot and the construction of the new house thereon. He has

determined this fact in favor of the respondent and there is evidence to support such finding.

The general rule is that when real estate is conveyed to one person and the consideration paid by another, it is presumed that the party who pays the purchase money intended a benefit to himself, and accordingly a resulting trust is raised in his behalf. But, when the conveyance is taken to a wife, for whom the purchaser is under legal obligation to provide, no such presumption attaches. On the contrary, the presumption in such case is that the purchase was designed as a gift or advancement to the person to whom the conveyance is made. This presumption, however, is one of fact and not of law and may be rebutted by parol evidence or circumstances showing a contrary intention. *Caulk v. Caulk,* 211 S. C. 57, 43 S. E. (2d) 600; *Legendre et al. v. South Carolina Tax Commission,* 215 S. C. 514, 56 S. E. (2d) 336; *Bates v. Bates et al.,* 213 S. C. 26, 48 S. E. (2d) 612. In this case the appellant directed that title to the original house and lot be placed in the joint names of the parties, even though the appellant paid the purchase price thereof. In these circumstances the law is settled that the part of the purchase price contributed by the appellant is presumed to be a gift to the respondent, and there is nothing in the evidence in this case to rebut the presumption. Hence, the conclusion is inevitable that the respondent had an undivided one-half interest in the original house and lot and when mortgaged or sold she was entitled to one-half of the proceeds thereof.

In the case of *Privette v. Garrison et al.,* 235 S. C. 119, 110 S. E. (2d) 17, 21, this Court said:

"While a resulting trust may be proven by parol, the evidence to establish it must be clear, definite and convincing. *Rogers v. Rogers,* 52 S. C. 388, 29 S. E. 812. And where the claim to such a trust is based upon payment of the purchase money or some definite portion of it by the beneficiary, such payment must be clearly and unmistakably

shown to have been so made at or before the time of the purchase. *Hutto v. Hutto,* 187 S. C. 36, 196 S. E. 369. * * *."

It is the position of the appellant that the trial Judge was in error in finding that there was a resulting trust in favor of the respondent. He submits that there is no competent, clear, definite, unequivocal, satisfactory and convincing evidence to support such finding. We are convinced from a reading of the record that there is clear, definite, and convincing evidence to establish that the sum of $2,854.28, which said sum was obtained by a refinancing mortgage on the original house and lot, one-half of said sum being owned by the respondent, was used to purchase the new lot. The evidence shows that this sum was placed in a joint bank account of the parties and four days later the appellant purchased the new lot and the proceeds of the refinancing were used to purchase such lot. The appellant admitted in his testimony that in order to get the $3,000.00 to pay for the new lot that he went to the bank and got the cash or wrote a check on the joint account of the parties. In the agreed statement contained in the transcript of record, it is admitted that "The parties decided to build a larger and more adequate house and, with that in mind, refinanced Lot 4 at First Federal on September 14, 1950, obtaining a mortgage loan in the amount of $6,200.00, the net proceeds of which were $2,854.28. * * * Four days later on September 18, Lot No. 6 was purchased from Mrs. Helen B. McDaniel and her two daughters for $3,000.00. It is not disputed that the proceeds of the mortgage of four days before furnished part of this purchase price." In the Brief of the appellant, we find this admission: "The net proceeds of this loan were $2,854.28, which was placed in the parties' joint bank account, and undoubtedly such proceeds were used to defray a part of the purchase price of Lot No. 6." The respondent testified that the $2,854.28 went into the purchase of the new lot.

There is also clear, definite and convincing proof that when the old house and lot were sold, that the net proceeds of

$4,921.16 also were used in the construction of the new house on the lot purchased by the appellant, title to which was taken in his own name. We quote from the testimony:

"Q. Did you and your husband reach an agreement as to acquiring a new home? A. Yes.

"Q. What was the agreement you reached? A. The only way we could acquire a new home was to sell the present home and take the money we got out of that house and put it into another house.

"Q. Did you reach an agreement that that was what you would do? A. Yes, sir.

"Q. Did you have any agreement with him as to what the ownership of the new home would be?"

\* \* \*

"A. Well, it would be owned the same manner, jointly, as the other was.

"Q. Both of you agreed to that? A. Yes, sir.

"Q. Subsequent to that time did you put another mortgage on your home, the one you owned at that time? A. Yes, sir.

"Q. Where did you obtain that mortgage from? A. Fidelity Federal.

"Q. What became of the money he received from the note and mortgage to them? A. Well, we purchased the lot that we built our house on with part of it, and with the three thousand dollars that remained it was taken to pay off the mortgage we had on the house where we were living.

"Q. And three thousand dollars of that money went to purchase the new lot? A. Yes, sir.

"Q. How long did you continue living in that same house after you obtained that mortgage? A. Oh, I would say just a few months actually after we bought the lot; around five months I would say.

"Q. Had you listed the house for sale at that time after you obtained the mortgage did you list the house for sale? A. Yes.

"Q. At that time you had already obtained the new lot? A. Yes, sir.

"Q. Did you sell that house? A. Yes, sir.

"Q. Do you recall who you sold it to? A. Yes, sir; W. Lindsey Smith and his wife.

"Q. What happened to the proceeds that you obtained from the sale of that house to Mr. and Mrs. Smith? A. Well, it was put in the new house that was to be built.

"Q. Any part of it used for any other purposes? A. No, sir.

"Q. Do you recall how the other mortgage was paid off? A. Well, when the house was sold the mortgage we had on that house was paid off by the proceeds from the selling of the house.

"Q. After you did that, how much balance did you have left? A. I would say a little over five thousand dollars.

"Q. What was done with that money? A. Of course, it all went into the new house; but as far as I remember it was the way we built our new house with cost plus, and there had to be a certain sum set aside to draw from before anything—"

The appellant admitted that a part of the funds obtained by the refinancing mortgage went into the purchase of the new lot. He also testified that when the original house and lot were sold that "not all of it" went into the construction of the new home.

The daughter of the respondent testified that she heard the discussion between her father and mother that the family was outgrowing the old house and they would have to build a new one. She further testified that they agreed that they would just sell the old home and take the money from that and build the new home, such to be owned jointly. The appellant testified that he had no agreement with the respondent that the title to the new lot would be placed in their joint names.

There is, in our opinion, clear, definite and convincing proof that the proceeds from the sale of the old house and lot owned jointly by the parties went into the construction of the dwelling on the new lot. The appellant himself admits that a part of the funds were so used, even though he denies that all of such funds were applied to this purpose. Since the conclusion is inevitable that the respondent not only furnished funds for the purchase of the lot in question, but also for the construction of the dwelling thereon, it was a question of fact for the trial Judge to determine the amount of funds so contributed. Upon this issue he has made a finding of fact, and there is evidence in the record to support such.

When the respondent was testifying to the oral agreement with her husband with reference to the ownership of the new home, the appellant objected to this testimony on the ground that any such agreement would have to be in writing, as is provided in Section 67-1 of the 1952 Code of Laws of South Carolina. We think that under the authority of *Brown v. Cave,* 23 S. C. 251, that the evidence as to the agreement was properly admitted and considered by the trial Judge, for the reason that the testimony showed full performance of the contract on the part of the respondent, which would take the case out of the Statute of Frauds. In the cited case, it is said:

"But if there should be any serious difficulty as to the proof to raise a resulting trust, it would seem that there can be no doubt that there was ample proof to take the case out of the statute of frauds by part performance. 'It is well settled that the Court of Equity will enforce specific performance of a contract within the statute when the parol agreement has been partly carried into execution. The distinct ground upon which Courts of Equity interfere in cases of this sort is that otherwise one party would be able to practice a fraud upon the other.' 2 Story Eq., para. 759; *Mims v. Chandler, supra* [21 S. C. 480]. We think the possession of the parties of their respective shares with the knowledge and consent of Boston, the improvement and cultivation of the same without

notice or warning, considered in connection with all the circumstances, and especially the payment of the purchase money, were sufficient evidence of part performance to take the case out of the statute. The agreement alleged by the respondents was proved. * * *"

The appellant asserts that the trial Judge committed error in holding that there was a resulting trust in favor of the respondent as to the funds contributed by her for the construction of the dwelling on the new lot. He asserts that where a claim to a trust is based upon the payment of the purchase money, or some definite portion thereof, such payment must be shown to have been so made at or before the time of the purchase. Attention is directed to the fact that the deed conveying title to the new lot was dated September 18, 1950, and that the old house was not sold until January 19, 1951, nearly four months later, that the proceeds derived from such sale could not have been paid at or before the time of the purchase of the new lot by the appellant.

It has been held by this Court that in order for a resulting trust to arise, that such must arise, if at all, at the time the purchase is made. The funds must then be advanced and invested. It cannot be made by after advances, or funds subsequently furnished. In the case of *Surasky v. Weintraub,* 90 S. C. 522, 73 S. E. 1029, it was held that the trust must be coequal with the deed, and cannot arise from any subsequent transactions. It was further held that in determining whether there was a resulting trust, we must look to the status of the parties at the time the deed was executed. In the case of *Hutto v. Hutto,* 187 S. C. 36, 196 S. E. 369, 370 it was held that in order to establish a resulting trust in lands conveyed to a grantee, it is necessary and indispensable that an actual payment of the purchase money, or some definite portion of it, should be clearly proved to have been made by the *cestui que* trust, at the time of the purchase. However, in this case, the Court quoted with approval from 3 Pomeroy's Equity Jurisprudence, at paragraph 1037, that in order for a resulting trust to arise,

"it is absolutely indispensable that the payment should be actually made by the beneficiary, or that an absolute obligation to pay should be incurred by him as a part of the original transaction to purchase, at or before the time of the conveyance; no subsequent and entirely independent conduct, intervention, or payment on his part would raise any resulting trust."

In Scott On Trusts, Vol. 3, Section 457, page 2300, it is said:

"In order to raise a resulting trust it is necessary that a person other than the grantee prior to or at the time of the purchase should pay or assume an obligation to pay the purchase price. It is not enough that subsequent to the purchase he pays or agrees to pay the purchase price."

In 54 Am. Jur., Trusts, Section 204, at page 159, it is said:

"A resulting trust arises, if at all, in the same transaction in which the legal title passes, at the time that legal title passes, on consideration advanced before or at that time, and not from matters thereafter occurring or on consideration thereafter advanced unless occurring or advanced immediately thereafter so as to be in fact part of the same transaction. The fundamental reason for the rule is that the resulting trust is one implied by law from the circumstances of consideration at the time of the transaction. * * *"

In the North Carolina case of *Waddell v. Carson,* 245 N. C. 669, 97 S. E. (2d) 222, 226, it is said:

"The general rule, which is supported by the overwhelming weight of authority, is, that in the absence of circumstances indicating a contrary intention, where on the purchase of property, the conveyance of the legal title is taken in the name of one person, for whom the purchaser is under no legal obligation to provide, and the purchaser has paid part of the purchase price and has incurred an absolute obligation to pay the remainder as a part of the original transaction of purchase at or before the time of conveyance, a re-

sulting trust arises by operation of law in favor of the person furnishing all the consideration, and the person thus obtaining the title is a trustee for his benefit. * * *"

In the case of *Loggins v. Daves*, 201 Ga. 628, 40 S. E. (2d) 520, it was held that where initial payment was made at time deed was passed to another by person claiming benefit of implied resulting trust, pursuant to intent that person claiming the trust should pay the purchase price, initial payment would support establishment of trust, and subsequent payments, made in accordance with original intention, would establish that portion of the claim.

The trial Judge found as a fact that the respondent contributed the sum of $1,427.14 to the purchase price of the new lot and such contribution took place prior to the purchase of said lot. He also held that at the time of the purchase of the property, the respondent had absolutely obligated herself to contribute all of her interest in the proceeds from the sale of the old house and lot to the purchase of the new lot and the construction of a dwelling thereon. We think, under the authorities above cited, that he was correct in this legal conclusion. The respondent had paid part of the purchase price and had incurred absolute obligation to pay the remainder, when the old house and lot were sold, as a part of the original transaction and agreement, and such agreement having been made before the time of the conveyance of the property in question to the appellant, a resulting trust arose in favor of the respondent. It has been held that where part of the price of land was paid by one person and the title taken in the name of another, a trust resulted in favor of the former only to the extent of the payment. *McGee v. Edwards*, 52 S. C. 472, 30 S. E. 602. In this case, the trial Judge allowed the respondent a resulting trust only to the extent of her contribution to the purchase of the lot and the construction of a dwelling thereon. We think this holding was correct.

The appellant charges that the trial Judge erred in not holding that the respondent had made a gift to him of any funds which might have belonged to her that went into the purchase of the new lot and the construction of a dwelling thereon. It is true that a gift from a wife to a husband may be inferred from the circumstances and the marriage relationship is a factor of importance to be considered. *Legendre et al. v. South Carolina Tax Commission, supra.* However, in the instant case, the appellant never testified that there was a gift to him by his wife. On the contrary, the wife specifically testified that there was no gift by her to the appellant. We quote from the record:

"Q. I will ask, did you make any of the money to him as a gift? A. No.

"Q. Did you intend for any of this money to go to him as a gift? A. No."

This testimony completely negates any gift and rebuts any presumption of such. This exception is overruled.

The appellant asserts that the trial Judge committed error in not holding that the respondent has been guilty of improper acquiescence and delay. He says that the only reasonable inference to be given to the evidence in this case is that the respondent knew and acquiesced in the taking of title to the lot in question in his own name and that such acquiescence and delay bars her from any recovery.

We do not find from the record that the trial Judge passed upon the issue raised by this exception. Therefore, it is not properly before us for decision. *Simonds v. Simonds,* 229 S. C. 376, 93 S. E. (2d) 107.

All of the exceptions of the appellant are overruled and the judgment below is affirmed.

Affirmed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.