18136

Mamie HODGES, Respondent, v. Harold HODGES, Appellant

(133 S. E. (2d) 816)

*Messrs. Nicholson & Nicholson,* of Greenwood, *for Appellant,*

*Messrs. Beasley & Beasley,* of Greenwood, *for Respond-ent,*

December 10, 1963.

BUSSEY, Justice.

This case is one of domestic discord in which the wife, respondent here, sued the appellant husband for divorce on the grounds of habitual drunkenness and physical cruelty and, in connection therewith, sought to recover alimony, costs, attorneys fees and a property settlement, including the declaration of a resulting trust as to a one-half interest in the home in which the parties lived prior to the separation, title to said home being in the husband.

The cause was referred to the Master of Greenwood County who, after taking rather voluminous testimony,

concluded that the wife had failed to prove her case under the applicable law, and recommended that relief be denied to the wife, except the costs of the action; the payment by the husband to the wife of the sum of three hundred dollars in lieu of a partition of household personal property still in the possession of the husband, and that the equipment and supplies used in the operation of a beauty parlor by the wife be decreed her sole and separate property.

Upon exceptions by the wife to the report of the master, the circuit court arrived at conclusions different from those of the master; decreed that a divorce a *vinculo matrimonii* be awarded to the wife on the grounds of habitual drunkenness and physical cruelty; that she be adjudged the owner of a one-half undivided interest in the residence standing in the name of the husband, subject to any indebtedness existing thereon at the time of the separation of the parties, and that the wife be entitled to a partition thereof. The cause is now before us, upon exceptions by the appellant husband, challenging the rulings of the circuit judge in the foregoing particulars.

The parties hereto were married in the year 1952, both of them at that time being in their early thirties. The husband was a bachelor and the wife was a divorcee with three minor children. Both parties were gainfully employed at the time and both continued to work until they separated on November 21, 1961, although there was some change in the occupation and some interruption of the wife's employment as a result of disability on her part.

It is conceded and thoroughly established that the husband here was an excellent father to the children of the wife who lived with the parties after the marriage. At the time of the separation the older son and a daughter had both married and were living out of the home, but were still in the Greenwood area where they had the opportunity to see the parties fairly frequently. The younger son, aged twenty at the time of separation, was mentally retarded as the result of a brain injury, and was still living in the home.

The real property in question was acquired in May, 1955, the husband paying therefor the sum of five thousand dollars. He borrowed one thousand dollars from his brother with which to make the down payment and gave a first mortgage in the amount of four thousand dollars for the remainder, the wife renouncing dower on all necessary documents. The wife was injured in the course of her employment in 1957, and for about a year drew Workmen's Compensation benefits, following which she received a lump sum settlement in the approximate amount of twenty-five hundred dollars. Thereafter, being disabled to continue her former employment, she spent some six months being trained as a beautician and, about June, 1960, opened a beauty parlor in a room built onto the home occupied by the parties. The mortgage of the husband on the property was increased by sixteen hundred dollars to accomplish the construction, the wife again renouncing dower on the new mortgage.

According to the testimony of the wife, a brother of the husband whom the wife regarded as being a bad influence on the husband, returned from military service to the Greenwood area some time near the commencement of the beauty parlor venture.

None of the foregoing facts are in any substantial dispute and we shall proceed to consider the matters which are in dispute.

Since the master and the circuit judge disagreed as to whether the wife had proved the gravamen of her complaint, we shall determine the question according to our own view of the evidence. In doing so, proper consideration must be given to the fact that the master saw the witnesses, heard the testimony delivered from the stand, and had the benefit of that personal observation of and contact with the parties and witnesses which may be of peculiar value in arriving at a correct result in a case of this character. See *Sherbert v. Sherbert*, 237 S. C. 449, 117 S. E. (2d) 715, and cases therein cited.

With reference to the habitual drunkenness and physical cruelty with which the husband is charged, the wife herself testified that the husband's drinking started "just about a year and a half ago, after his brother came out from the service." As the reference was held on May 8, 1962, this would have made the alleged drinking, of which she complained, mark its commencement from possibly November or December, 1960. She proceeded to testify in generalities as to his excessive drinking and physical cruelty, which later she testified started some four or five months before she left him, but offered testimony as to only two specific instances of drunkenness during the last year of cohabitation and one specific instance of alleged physical cruelty. She and her witnesses offered evidence of some two or three instances of intoxication on the part of the husband which occurred in the course of the marriage some several years before the difficulty between the parties commenced, which instances were clearly too isolated and too remote to have any substantial bearing.

The wife admits, that, with the exception of one occasion, she made no complaint to any one about the alleged ill-usage and drunkenness of the husband. This particular occasion was some five or six weeks prior to the separation of the parties and the accounts of husband and wife as to what happened on that occasion are at wide variance. The wife contends that the husband hit her while drinking and threatened to kill her, while the husband contends that he only shoved his wife away from him in the course of an argument. In any event, she does not seem to have been injured. She, however, called her married son and law officers to the scene, the law officers not being called as witnesses by the wife. The married son came, engaged in a scuffle with the husband, hit him, subdued him and put him to bed, and, on the following morning, apologized to him for having hit him and, in effect, told the husband that he considered the ruckus to be just as much his mother's fault as it was the husband's fault. This son did testify that in

the course of his scuffle with the husband, the husband threatened to use a knife, which, however, was not drawn or even seen, and that the husband did, apparently from the floor, hit the wife. He did not contend that his mother was injured in any way, and much of his testimony was favorable to the husband, with whom he still maintains friendly relations.

The retarded son was called by the wife as a witness and, to some extent he corroborated his mother's version of this particular occurrence, but it is clear that this retarded son was easily led, was, at best, vague, and moreover, much of his testimony was favorable to the husband, rather than to his own mother.

The only other specific instance of drunkenness testified to by the wife, and the incident which she testified finally caused her to leave him, was a Saturday night occurrence. On this occasion, Mrs. Hodges' brother, his wife and a sister of his wife came to have an oyster supper with the parties. The wife here does not give the date of this occurrence, but the husband's testimony is to the effect that this occurrence was some two or three weeks before the wife's departure from the home. The wife pictures the husband as a sloppy, disgraceful drunk on this occasion. The husband admits taking some drinks with the company, getting sick, nauseated and falling and striking his head against the bathtub while in the act of vomiting in the bathroom. In brief, the wife contends the husband was drunk, while the husband contended he was ill. It is quite worthy of note that the wife did not call as corroborating witnesses either her brother, his wife or his sister-in-law. Her failure to so call them, of course, creates a strong presumption that had they been called, they would not have corroborated her version.

The married daughter of the wife was called as a witness on behalf of the husband. There is no indication in the record whatsoever of any animosity between the wife and the daughter, and the testimony of the daughter negatived

that of the wife as to both alleged grounds for divorce. The only witnesses outside of the family circle testified strongly for the husband. They included a next door neighbor of the parties of long standing; the distributor who supplied the service station operated by the husband, and the operator of a business across the street from the place of business of the husband. All of these witnesses testified that they had never observed any evidence of drunkenness or other impropriety on the part of the husband.

Admittedly, these disinterested witnesses had not the opportunity to be in the home of the parties, but their testimony is to the effect that the husband was a sober, hard working man twelve hours a day. The evidence was undisputed that the husband worked an excellent garden in his off hours and produced vegetables not only for his own family, but for some of the neighbors. The testimony of the next door neighbor is to the effect that the husband appeared to be an excellent husband and father. It is illogical to believe that the husband could have been, in the privacy of the home, the vile beast that his wife contends he was without the next door neighbors at least knowing something about it.

The record, we think, tends to reflect that a primary basis of difficulty between these parties arises out of a resentment by the wife of the husband's association with his brother, and a resentment by the husband of a woman employee in the wife's beauty parlor with whom the wife associated. Each party contended that the associate of the other was a bad influence.

From the foregoing we think that the master who saw and heard the witnesses and had full opportunity to observe the demeanor of each, correctly concluded that the evidence offered on behalf of the wife was insufficient to entitle her to a divorce on the ground of either habitual drunkenness or physical cruelty. Principles governing the sufficiency of evidence to warrant a divorce on the ground of physical cruelty; the degree of proof required generally;

and sufficiency of corroborating evidence in a case of this kind, are fully enunciated in the case of *Brown v. Brown,* 215 S. C. 502, 56 S. E. (2d) 330, 15 A. L. R. (2d) 163, and we need not repeat them here. The only specific evidence of alleged physical cruelty testified to by the wife, and as to which she offered any corroborating evidence, occurred at least five or six weeks before the wife left the husband, and there is no evidence of any physical harm done or of any explanation as to why she did not sooner leave the husband if she were in any reasonable apprehension of serious bodily harm or danger from the husband.

As to the alleged charge of habitual drunkenness, only two specific instances within the last year that the parties lived together are testified to by the wife, and as to the second and last of these, she offered no corroborating evidence and no explanation of her failure to call as witnesses members of her family who were present on the occasion. On the other hand, there was ample and substantial testimony negativing the wife's claim as to both physical cruelty and habitual drunkenness within the meaning of those terms in divorce law.

With respect to the wife's claim of a resulting trust interest in the real property in the name of the husband, the evidence in her behalf was clearly insufficient to establish the same. The evidence required to establish either a constructive or resulting trust must be clear, definite, unequivocal and convincing. *Ramantanin v. Poulos,* 240 S. C. 13, 124 S. E. (2d) 611; *Privette v. Garrison,* 235 S. C. 119, 110 S. E. (2d) 17; *Carmichael v. Huggins,* 221 S. C. 278, 70 S. E. (2d) 223.

In the fairly recent case of *Green v. Green,* 237 S. C. 424, 117 S. E. (2d) 583, this court had occasion to review prior decisions of this court, as well as other authorities, dealing with when a resulting trust arises and what has to be proved in order to establish a resulting trust in lands conveyed to another. Concisely stated, in

order for a resulting trust to arise, such must arise, if at all, at the time the purchase is made. The funds must then, or prior thereto, be advanced and invested. A trust will not result from funds subsequently furnished. Authorities quoted there support the proposition that, incurring an absolute obligation to pay, as a part of the original transaction to purchase, at or before the time of conveyance, may suffice, in lieu of actual payment.

Here the evidence on behalf of the wife is to the effect that the parties agreed to buy the real property together and that she thought the title was in both names until their difficulties arose, when she discovered that this was not true. As to consideration, the evidence reflects that during the time the parties were living together there was some commingling of funds. The wife worked throughout most of the marriage, except when she was disabled and the six months she was being trained as a beautician.

While she was disabled as a result of an accident she drew Workmen's Compensation benefits. It seems clear that she, from her income, more often than not bought the family groceries and incidentals for herself and minor children, and if she had anything left over out of her paycheck, turned it over to the husband who paid the other bills. The amounts which she turned over to the husband were either substantial or insubstantial, depending upon the testimony of the party. When she received the lump sum settlement as the result of her compensable injury in the amount of twenty-five hundred dollars, she bought an automobile costing her more than fifteen hundred dollars, and it is not clear just where the rest of this settlement went, as the wife's testimony thereabout is somewhat conflicting.

It is clear that the wife at one time advanced the husband the sum of one thousand dollars when he went into the filling station business for himself. On the other hand, when the wife went into the beauty parlor business, it is clear that the husband, in addition to borrowing sixteen hundred dollars to construct quarters for the beauty parlor, ad-

vanced to the wife substantial sums to set her up in business in the beauty parlor operation.

The wife offered no specific evidence as to any specific amount of her money being expended at any time towards the purchase price of the real property. Nor does she offer any specific evidence that she ever became legally or absolutely obligated to pay any portion of the purchase price. Her contention rather is that her income was greater than that of her husband, and that with the commingling of funds, some of her money inevitably found its way into the purchase price of the property. Her contention that she had a greater income than the husband is clearly proved to be incorrect by the income tax returns of the parties in evidence. These returns show that even with the wife's Workmen's Compensation benefits added in, her total income for the nine years that the parties lived together was substantially less than that of the husband. Except for the wife's generalities as to the excessive drinking on the part of the husband during the last year or so that they lived together, there is no suggestion of any squandering by the husband of his income. The record rather reflects that both parties, at least until discord between them developed, expended their respective incomes in an effort to provide a comfortable living for the parties and the children of the wife. Considering the natural tendency of a mother to take good care of her children by a former marriage, and the fact that she had a lesser income than the husband, we are led to the conclusion that it was highly improbable that any of her funds of any consequence went even indirectly into the purchase of the real property.

From the foregoing brief recitation of the evidence, we conclude that the master was correct in his conclusion that the proof offered by the wife to establish a resulting trust in the real property was entirely insufficient under the applicable principles of law.

It is, therefore, the opinion of this court that the order of the circuit court, insofar as it granted the plaintiff wife

a divorce and awarded to her a one-half interest in the real property involved, should be reversed and the cause remanded to the lower court for entry of judgment in accordance with the Master's Report herein.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur.