**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 12-2465**

———————

In Re:  PATRICIA SUSAN PFISTER,

             Debtor.

------------------------------

ROBERT F. ANDERSON,

             Plaintiff - Appellant,

        v.

ARCHITECTURAL GLASS CONSTRUCTION, INC.,

             Defendant - Appellee.

———————

Appeal from the United States District Court for the District of
South Carolina, at Spartanburg.  Henry M. Herlong, Jr., Senior
District Judge; Helen E. Burris, Bankruptcy Judge.  (7:12-cv-
01825-HMH; 09-05670-hb; 10-80162-hb)

———————

Argued:  December 11, 2013            Decided:  April 17, 2014

———————

Before MOTZ, KING, and SHEDD, Circuit Judges.

———————

Reversed in part, vacated in part, and remanded by published
opinion.  Judge Motz wrote the opinion, in which Judge King
joined.  Judge Shedd wrote a dissenting opinion.

———————

**ARGUED:** Richard I. Simons, ANDERSON & ASSOCIATES, P.A.,
Columbia, South Carolina, for Appellant.  William Norman Epps,
III, EPPS, NELSON & EPPS, Anderson, South Carolina, for

Appellee.  **ON BRIEF:** Marilyn E. Gartley, ANDERSON & ASSOCIATES, P.A., Columbia, South Carolina, for Appellant.

---

DIANA GRIBBON MOTZ, Circuit Judge:

Seven months before declaring bankruptcy, Patricia Pfister transferred her interest in real property to Architectural Glass Construction, Inc. ("AGC"), a corporation wholly owned by her husband. After a trial, the bankruptcy court made findings of fact and concluded on the basis of those findings that this conveyance was constructively fraudulent. The bankruptcy court therefore ordered AGC to reimburse the bankruptcy estate in the amount of $43,500. The district court found no fault in the bankruptcy court's findings of fact, but nonetheless reversed. For the reasons that follow, we reverse in part, vacate in part, and remand the case to the district court for further proceedings consistent with this opinion.

I.

The following facts were found by the bankruptcy court or are otherwise undisputed.

On May 10, 2001, Mrs. Pfister and her husband, Phillip Pfister, acquired undeveloped real property in Greer, South Carolina. Branch Banking & Trust ("BB&T"), as mortgagee, entirely financed the transaction. Under the terms of the mortgage, Mr. and Mrs. Pfister granted the bank a security interest in the property and undertook to repay the loan.

Originally, Mr. Pfister intended to have his wholly owned corporation, AGC, buy the property. The company, not Mr. and Mrs. Pfister, would utilize the land. An initial contract specified AGC as the buyer, but on the date of purchase, Mr. Pfister changed his mind. On the advice of his accountant, Mr. Pfister opted to buy the land himself, then lease the property to AGC. This, he believed, would lower the company's taxes, benefiting him as the company's sole owner. In furtherance of this intent, Mr. Pfister titled the property in the name of himself and Mrs. Pfister. As Mr. and Mrs. Pfister both testified on repeated occasions, the decision to title the property in their names -- not AGC's -- was considered and intentional.

Ultimately, AGC never paid any rent to the Pfisters. Instead, AGC made mortgage payments directly to the bank. The Pfisters did not transfer title to AGC. Thus, although the company paid for the land, Mr. and Mrs. Pfister remained its record owners.

On January 24, 2002, the Pfisters refinanced their mortgage. In an agreement with South Trust Bank ("South Trust"), the Pfisters granted South Trust a security interest in the property in exchange for $168,000. In contrast to the mortgage with BB&T, the agreement with South Trust listed AGC as the borrower. As a result, the company bore legal

4

responsibility for making the loan repayments. Of course, the new obligation did not change the parties' pattern of practice: AGC continued, as it always had, to shoulder the property's mortgage expense.

Over the next six years, the property was mortgaged several more times. In each case, Mr. and Mrs. Pfister granted the bank a security interest in the property. The mortgages differed, however, with respect to the identity of the borrower. One contract specified Mr. and Mrs. Pfister as the borrowers; others obligated AGC. Notwithstanding the borrower listed, AGC made all the loan repayments.

On December 31, 2008, AGC took out an $87,000 loan from Greer State Bank. As with the other loan agreements, Mr. and Mrs. Pfister pledged the property as collateral. In preparing the mortgage documents, however, the bank listed AGC, not Mr. and Mrs. Pfister, as the mortgagor. At closing, an attorney realized that AGC could not grant the mortgage because the company was not listed on the property's deed. To rectify the problem, Mr. and Mrs. Pfister deeded the property to AGC in exchange for ten dollars consideration. With AGC now the record owner, the bank processed the mortgage as drafted.

Seven months later, on July 31, 2009, Mrs. Pfister filed for Chapter 7 bankruptcy protection. Some months after that, the bankruptcy trustee moved to set aside the transfer of her

interest in the property to AGC as a constructively fraudulent conveyance. In his complaint, the trustee alleged that Mrs. Pfister's one-half interest in the property had a value of $270,000, but that she had disposed of the property for nominal consideration. Because Mrs. Pfister was insolvent at the time of the transfer, the transaction was assertedly avoidable under 11 U.S.C. §§ 548(a)(1)(B) and 544(b).

After a two-day trial in which a number of witnesses testified, including both Mr. and Mrs. Pfister, the bankruptcy court found in the trustee's favor. It determined that Mrs. Pfister held a one-half interest in the property, which she transferred to AGC in December 2008 for less than "reasonably equivalent value." In so holding, the court rejected AGC's argument that it had always owned the property by way of a resulting trust. The court concluded that prior to the December 2008 transfer, Mr. and Mrs. Pfister owned the property free from any interest of AGC. Accordingly, the court held that Mrs. Pfister's transfer of the property to AGC at that time -- seven months before filing her bankruptcy petition -- was a constructively fraudulent, voidable transfer.

The district court reversed. It accepted the facts as found by the bankruptcy court, but determined that AGC's use of the property and payment of the mortgage compelled reversal. The district court reasoned that the facts found by the

6

bankruptcy court evidenced a resulting trust, pursuant to which AGC held equitable title to the property and Mrs. Pfister held only bare legal title. Because the district court concluded that the interest Mrs. Pfister held lacked any value at the time she conveyed it, the court held that Mrs. Pfister had not made a voidable, constructively fraudulent conveyance in December 2008.

The trustee noted a timely appeal.

## II.

A bankruptcy estate includes all the property a debtor owns at the moment she files for bankruptcy. 11 U.S.C. § 541(a)(1). Under certain conditions, the bankruptcy estate also includes property the debtor disposed of <u>before</u> declaring bankruptcy. Specifically, the Bankruptcy Code permits the bankruptcy trustee to reclaim property the debtor fraudulently transferred before filing her petition. 11 U.S.C. §§ 544 & 548.[1]

The Bankruptcy Code bars both actual and constructive fraud. <u>See</u> <u>id.</u> § 548(a)(1). Constructive fraud, the type at issue here, obtains when in the two years preceding bankruptcy,

---

[1] Section 544(b) provides the trustee in bankruptcy with all the powers of an unsecured creditor under state debt collection law. Because an unsecured creditor may avoid a fraudulent transfer in South Carolina, <u>see</u> S.C. Code Ann. § 27-23-10(A), the trustee in bankruptcy may do the same. Of course, the trustee may also avoid fraudulent transfers under 11 U.S.C. § 548, irrespective of what state law provides.

7

an insolvent debtor transfers an asset for less than "reasonably equivalent value." Id. § 541(a)(1)(B). If the debtor so transfers an asset, the trustee may avoid the transaction and reclaim the relinquished asset. Id. The transferee must surrender the property or provide the bankrupt's estate with the asset's cash equivalent. Id. § 550.

Although a trustee may reclaim a property interest that the bankrupt debtor has owned in the past, the trustee may not reclaim a greater property interest than that which the debtor actually owned. Mid-Atl. Supply, Inc. v. Three Rivers Aluminum Co., 790 F.2d 1121, 1124 (4th Cir. 1986). This rule becomes particularly important in the context of trusts. A trust severs the legal and equitable interests in property, allowing the debtor to possess either the property's equitable interest (a valuable asset) or bare legal title (a valueless asset). Cf. id. at 1125; Epworth Children's Home v. Beasley, 616 S.E.2d 710, 718 (S.C. 2005). Property in which the debtor holds "only legal title and not an equitable interest . . . becomes property of the [bankruptcy] estate" -- and so becomes available to satisfy the debtor's obligations -- "only to the extent of the debtor's [bare] legal title." 11 U.S.C. § 541(d). The equitable interest, owned by another, cannot be reached by the bankrupt debtor's creditors. Id.

8

Here, the parties dispute the operation of a resulting trust, and thus, the value of the property interest transferred by Mrs. Pfister to AGC. On the one hand, AGC contends that a resulting trust arose in its favor because it made all the payments on the mortgage, which provided the funds to buy the property. According to AGC, Mr. and Mrs. Pfister retained only bare legal title (an asset without significant value), and so, Mrs. Pfister could not -- and did not -- transfer property for <u>less</u> than its value. <u>See</u> <u>Mid-Atl. Supply</u>, 790 F.2d at 1125. On the other hand, the trustee contends that the ownership of the property involved no resulting trust. The trustee maintains that the legal and equitable interests in the property were never divided, and thus, in December 2008, seven months before declaring bankruptcy, Mrs. Pfister transferred something of value to AGC, i.e., her one-half interest in the property.

After finding the facts set forth above, the bankruptcy court determined that there was "no justification for a resulting trust." The district court expressly accepted the factual findings of the bankruptcy court, but nonetheless reversed. It held that Mrs. Pfister held only bare legal title to a one-half interest in the property, and that AGC, by operation of a resulting trust, was the property's equitable owner. Accordingly, the transfer to AGC was not avoidable under the Bankruptcy Code.

9

On appeal, we review the factual findings of the bankruptcy court for clear error and the legal conclusions of the bankruptcy court and the district court de novo.  *Kielisch v. Educ. Credit Mgmt. Corp. (In re Kielisch)*, 258 F.3d 315, 319 (4th Cir. 2003).  We look to South Carolina trust law to determine the parties' property rights.  *Butner v. United States*, 440 U.S. 48, 55 (1979).[2]


                              III.

Under South Carolina law:

> The general rule is that when real estate is conveyed
> to one person and the consideration paid by another,
> it is presumed that the party who pays the purchase
> money intended a benefit to himself, and accordingly a
> resulting trust is raised in his behalf. . . .  But
> when the conveyance is taken to a wife or child, or to
> any other person for whom the purchaser is under legal
> obligation to provide, no such presumption attaches.
> On the contrary, the presumption in such case is that
> the purchase was designed as a gift or advancement to
> the person to whom the conveyance is made.

*Caulk v. Caulk*, 43 S.E.2d 600, 603 (S.C. 1947) (internal citation omitted) (emphasis added).

---

[2] AGC contends that whatever we do on appeal is irrelevant because although the trustee appealed the district court's imposition of a resulting trust, he failed to contest the court's ultimate holding:  that AGC possessed the property's equitable interest.  Appellee's Br. 19-20.  We disagree.  The trustee properly appealed the antecedent issue:  the existence of a resulting trust.  If we find no resulting trust to exist, the court's derivative ruling cannot stand.

Here, AGC paid for property deeded to Mrs. Pfister and her husband, Mr. Pfister. Because Mrs. Pfister is the wife of Mr. Pfister, and Mr. Pfister is the sole owner of AGC, South Carolina law presumes that the purchase was intended as a gift by Mr. Pfister to Mrs. Pfister. Windsor Props., Inc. v. Dolphin Head Constr. Co., 498 S.E.2d 858, 861 (S.C. 1998) (applying gift presumption to transfer from husband's company to wife). Accordingly, a court must presume that when the property was titled in her name, Mrs. Pfister became the full owner of a one-half interest in the property, holding both the land's legal and equitable interests. See Baptist Found. for Christian Educ. v. Baptist Coll. at Charleston, 317 S.E.2d 453, 458 (S.C. 1984) (explaining that a gift involves "the transfer of title and beneficial ownership") (emphasis added).[3]

The gift presumption, of course, "is one of fact and not of law." Caulk, 43 S.E.2d at 603. An opponent to a gift may rebut the presumption by offering clear and convincing evidence that a gift was never intended. Glover v. Glover, 234 S.E.2d 488, 489 (S.C. 1977). If the party opposing a gift can establish a resulting trust's existence, the party in whose name the asset

---

[3] AGC inaccurately argues that the trustee raises the operation of a gift presumption for the first time on appeal. On the contrary, the record is replete with invocations of the gift presumption and the transfer's intra-family nature. That the district court failed to apply the presumption is immaterial.

11

is titled will be stripped of any equitable interest in the property, retaining only bare legal title.  McDowell v. S.C. Dep't of Soc. Servs., 370 S.E.2d 878, 880 (S.C. 1987) (per curiam) (explaining that a beneficiary of a resulting trust holds the equitable interest in property).  In that instance, the titleholder is viewed as the asset's trustee, who can exercise control over the property only for the benefit of the party who holds the property's equitable interest, i.e., the property's valuable interest.  Id.

A party seeking to overcome the gift presumption and establish a resulting trust must prove by clear and convincing evidence that (1) it paid for the property (or committed to pay for the property), (2) with the intent to own it, (3) on the date of purchase.  Moore v. McKelvey, 221 S.E.2d 780, 781 (S.C. 1976); Surasky v. Weintraub, 73 S.E. 1029, 1031 (S.C. 1912).  The last requirement is important.  South Carolina trust law is clear that a resulting trust "arises at the time . . . of [the] purchase, or not at all."  Larisey v. Larisey, 77 S.E. 129, 130 (S.C. 1913) (emphasis added); see also Hodges v. Hodges, 133 S.E.2d 816, 819–20 (S.C. 1963).  "[T]he trust must be coequal with the deed, and cannot arise from any subsequent transactions."  Larisey, 77 S.E. at 130.  That a party pays for property and/or intends to own it at some point in time fails to establish a trust.  Green v. Green, 117 S.E.2d 583, 589 (S.C.

12

1960).  For a resulting trust to arise, payment and intent must coincide with a deed's execution.  Larisey, 77 S.E. at 130.

Here, it is undisputed that AGC committed to pay for the property under post-May 2001 mortgages and intended to own the property after the December 2008 transfer.  But deferring, as we must, to the facts found by the bankruptcy court, we cannot conclude that the bankruptcy court erred in finding that these requirements were not met on the date of the May 2001 purchase.  That contention must be rejected for two reasons.

First, with respect to the payment for the property, the bankruptcy court found that the property's purchase was entirely financed by BB&T, and thus neither the Pfisters nor AGC paid for the property on the date of the land's acquisition.  The bankruptcy court did not even find that AGC committed to pay for the property on this date.  Accordingly, AGC did not prove by clear and convincing evidence that it paid for the property or intended to pay for it on the date of the property's purchase.

Second, and equally important, with respect to intent, the bankruptcy court found (and indeed, it is undisputed) that at the time of the property's purchase, the parties contemplated a rental arrangement.  That is, AGC would lease the property from, and pay rent to, the owners, Mr. and Mrs. Pfister.  Accordingly, on the date of the purchase, the parties intended that AGC would serve as the property's tenant, not the property's owner.  This,

13

of course, belies any conclusion that AGC gained ownership of the property on the date of purchase. If AGC wished to lease the property, it could not have intended to own it. Thus, AGC also did not prove that it intended to own the property on the date of acquisition.

Reaching a different result, the district court emphasized AGC's habitual payment of the loans on the property. These payments, however, standing alone, fail to supply the basis for a trust. South Carolina law cabins the power of courts to institute equitable remedies. With respect to the imposition of a resulting trust, a court may sever an asset's legal and equitable interests only if a party commits to pay for an asset on the date of purchase and intends to own it on that date. See Hodges, 133 S.E.2d at 819–20; Larisey, 77 S.E. at 130; Surasky, 73 S.E. at 1031. Here, the bankruptcy court found no justification for a resulting trust. We cannot hold that in so concluding, the bankruptcy court clearly erred.[4]

---

[4] AGC has suggested that while the initial mortgage was "in the individual names" of Mr. and Mrs. Pfister, the initial note obligated AGC. This obligation, it argues, evidences the corporation's commitment to pay for the property on the date of the land's acquisition. But as AGC acknowledged at oral argument, it never sought to admit the note into evidence. Accordingly, neither we nor the bankruptcy court could examine the note. Nor does Mr. Pfister's testimony regarding the company's obligation under the note suffice to show AGC's commitment. In addition to being self-serving, the testimony violates Federal Rule of Evidence 1002, which recognizes the
(Continued)

14

IV.

For these reasons, we reverse the district court insofar as it found a resulting trust to sever Mrs. Pfister's legal and equitable interests in the property. Because the district court found a resulting trust to exist, it did not reach other issues presented to it. We therefore vacate the judgment of the district court and remand the case to it for further proceedings consistent with this opinion.

<u>REVERSED IN PART,</u>
<u>VACATED IN PART,</u>
<u>AND REMANDED</u>

---

inherent unreliability of oral testimony about the contents of a document and so requires a party to introduce an "original writing" to establish the document's contents. See Fed. R. Evid. 1002; Fed. R. Evid. 1004; cf. United States v. Alexander, 326 F.2d 736, 740 (4th Cir. 1964) (holding that the Government had to produce an original check where it sought to establish the terms of the check). In any event, the note obligation speaks only to the first prong of the resulting trust analysis: a commitment to pay for the property. AGC cannot show that it has satisfied the test's second prong: an intent to own the property. As noted above, it is undisputed that AGC initially intended to lease the land.

15

SHEDD, Circuit Judge, dissenting:

I agree with the district court that there was a resulting trust in favor of Architectural Glass Construction ("AGC"). Under South Carolina law, a resulting trust is an equitable remedy designed "to effectuate the intent of the parties in certain situations where one party pays for property, in whole or in part, that for a different reason is titled in the name of another." Bowen v. Bowen, 575 S.E.2d 553, 556 (S.C. 2003). Here, there is a resulting trust in favor of AGC because the testimony regarding the intent of the parties is that Mrs. Pfister had mere legal title and that AGC is and always has been the equitable owner of the property.

In its order, the bankruptcy court offered no analysis for its one-sentence conclusion that there was no resulting trust. However, a review of the bankruptcy court's comments during the trial reveals that the bankruptcy court misunderstood the requirements for a resulting trust. The court stated, "Every bit of testimony that I heard is that [the property] was supposed to be deeded in the name of the individuals, and that's not a mistake." J.A. 1537 (emphasis added). The court later explained that it did not believe there was a resulting trust, stating that "[h]ere the intention of the parties was that the property was to be deeded in the individual names." J.A. 1544 (emphasis added). Apparently, the bankruptcy court believed the

16

intentional act of putting Mrs. Pfister's name on the deed was the "intent" that proved that she was the equitable owner of the property. That is incorrect.

Under South Carolina law, courts impose resulting trusts when property is paid for by one party but titled in the name of another. See Hayne Fed. Credit Union v. Bailey, 489 S.E.2d 472, 475 (S.C. 1997). Thus, with real estate, a resulting trust is necessary only where property is deeded in the name of someone other than the equitable owner. It is simply incorrect to conclude, as the bankruptcy court did, that because the property was deeded in Mrs. Pfister's name, AGC—whom the Pfisters intended to own the property and who indisputably paid for the property—is not entitled to a resulting trust.

The controlling question is not what name is on the deed, as the bankruptcy court seemed to believe, but rather whom the parties intended to own the property at the time the property interest was created, that is, at the real estate closing. Here, the testimony clearly and convincingly indicates that AGC is, and was always intended to be, the equitable owner of the property. Mr. and Mrs. Pfister both testified that they put the deed in their individual names based on advice from their accountant to claim a rental arrangement for tax purposes, but that the property was intended to be owned by AGC. J.A. 1260-61, 1353-54. AGC's intent to own the property at the time the

17

property interest was created is corroborated by AGC's actions both before and after the interest arose.[1] AGC had the pre-deed plat prepared in its name, J.A. 439-40, and AGC, not Mrs. Pfister, executed the note which supplied the purchase price for the property, J.A. 1474-75.[2] Furthermore, the two buildings erected on the property were financed with loans made in AGC's name, and AGC made every payment on any and all obligations

---

[1] While AGC's intent is critical at the time the property interest was created, its actions taken both before and after confirm its intent at the time the interest arose.

[2] Contrary to the majority's assertion, we may properly consider evidence concerning the note despite the fact that AGC did not admit the note itself into evidence. Although Federal Rule of Evidence 1002 generally requires a party to introduce an "original writing" to prove the contents of a document, that Rule—like most evidentiary rules—is subject to waiver where, as here, no objection was made to the admissibility or relevance of evidence offered to prove the contents of the document. See, e.g., Ridgway v. Ford Dealer Computer Servs, Inc., 114 F.3d 94, 98 (6th Cir. 1997). Moreover, Mr. Pfister's testimony, while "self-serving," was clearly admissible. See, e.g., U.S. v. Sklena, 692 F.3d 725, 733 (7th Cir. 2012) ("To say that evidence is 'self-serving' tells us practically nothing: a great deal of perfectly admissible testimony fits this description."); In re Dana Corp., 574 F.3d 129, 153 (2d Cir. 2009) ("Of course, the fact that their denials were self-serving does not mean that such testimony would not be admissible at trial . . . ."). In any event AGC also offered the testimony of Greg Sisk, previously a commercial lender at BB&T, regarding the contents of the note, J.A. 1474-75; Sisk's testimony is not self-serving.

Further, it is undisputed that AGC signed the note and obtained the money to purchase the property at closing. The majority assertion that AGC did not pay because BB&T financed the transaction is at best puzzling.

attached to the property or the improvements. <u>In re Pfister</u>, 2012 WL 1144540, at *1 (Bankr. D.S.C. Apr. 4, 2012).

This case is straightforward—the bankruptcy court was incorrect, and the district court was correct, in understanding when a resulting trust occurs. Under South Carolina law, a resulting trust arises in favor of AGC "to effectuate the intent of the parties" because AGC paid for property "that for a different reason [was] titled in the name of [Mrs. Pfister]." <u>See</u> <u>Bowen</u>, 575 S.E.2d at 556. For that reason, I would affirm the district court. Therefore, I dissent.